FIELDS v. G. M. BRASS & ALUMINUM FOUNDRY COMPANY.

WORKMEN'S COMPENSATION—BENCH MOLDER—BACK INJURY—FIND-
INGS OF COMMISSION—EVIDENCE.

Finding of workmen's compensation commission that plaintiff
bench molder in defendant's foundry had sustained a disability
due to causes and conditions characteristic of and peculiar
to the business of the employer, which arose out of and in the
course of the employment, was sustained by competent testi-
mony under record showing plaintiff handled daily from 20
to 40 molds weighing from 20 to 300 pounds, and had to bend
over, lift the molds and carry them a short distance, resulting
in more strain on his back than that which would attend em-
ployment in general and that there was a causal connection
between plaintiff's work and his resulting disablement, hence,
award of compensation under the occupational disease amend-
ment is affirmed (CL 1948, § 417.1).

Appeal from Workmen's Compensation Commis-
sion.  Submitted October 10, 1951.  (Docket No. 65,
Calendar No. 44,930.)  Decided January 7, 1952.

Charles Fields presented his claim for compensa-
tion against G. M. Brass & Aluminum Foundry Com-
pany, employer, and Michigan Mutual Liability
Company, insurer, for occupational disease contract-
ed during his employment.  Award to plaintiff.  De-
fendants appeal.  Affirmed.

*Robert S. Feldman,* for plaintiff.

*L. J. Carey* and *George J. Cooper,* for defendants.

BOYLES, J.  Plaintiff was awarded workmen's com-
pensation by the commission and the defendants ap-

REFERENCES FOR POINTS IN HEADNOTES

As to compensable strains arising from employment, see 58 Am Jur,
Workmen's Compensation § 255.

peal. The only question involved is whether plaintiff suffered a disablement within the meaning of the act. On April 15, 1949, plaintiff while employed by the defendant foundry company became totally disabled from performing the work in which he was engaged, namely, as a bench molder lifting and carrying molds for the defendant brass and aluminum foundry company. The molds weighed from 20 to 300 pounds. He handled from 20 to 40 molds a day and had help only in handling the heavier molds weighing more than 100 pounds.

Plaintiff had slipped and injured his back in 1940, while working for a former employer, was obliged to quit work and was operated on in 1942 for removal of an intervertebral disc between the fourth and fifth lumbar vertebrae of his spine. After the operation he resumed lighter work without any apparent disability. About 3 or 4 years later he again began to do heavy lifting in the foundry of the defendant company and had no trouble with his back for several months until, in 1946, his back started to become painful. The pain increased gradually until April of 1949 when he had to quit working. There was undisputed medical testimony to the effect that the plaintiff's disablement was the result of the removal of the disc between the fourth and fifth lumbar vertebrae of his spine, and that the loss of the cushion between these bones resulted in their being compressed together, causing pain because of his heavy lifting of the molds. In his work it was necessary for plaintiff to bend over, lift the molds and carry them a short distance, resulting in more strain on his back than that which would attend employment in general. He testified:

"*Q.* Tell us in your own words so we laymen can understand just what bench molding consists of?

"*A.* Well, what I was doing mostly was plate molding. It consisted of a cope and drag and a plate. You shovel into both parts and remove the plate and set your cores and put your mold on the floor.

"*Q.* Did you have to turn the molds over?

"*A.* Yes, sir.     *     *     *

"*A.*     *     *     *     I was doing mostly plate molding. You have a plate in between and you lift your cope off after you have rammed up and set it on your bench and then remove your plate and set your cores. Then lift your cope and put it back on to your drag. That is called closing your mold. Then you set your mold from the bench to the floor.

"*Q.* You had to lift the mold from the bench to the floor?

"*A.* Yes.

"*Q.* You had to handle the full weight of the mold during that operation?

"*A.* Yes, the full weight.

"*Q.* How big were the molds?

"*A.* They varied. I would say from 20 to 200 to 300 pounds.

"*Q.* These big molds weighed a couple of hundred pounds, would you have to lift those yourself?

"*A.* I lifted the cope by myself. When it come to setting them on the floor, I had to have help.

"*Q.* How many of those molds did you handle a day?

"*A.* Well, from 20 to 40 molds a day.

"*Q.* You never run any higher than that?

"*A.* No, I don't think I did, not on the large molds like that I never did.

"*Q.* Did you have to carry those molds any distance?

"*A.* Oh, about 8 to 10 feet, maybe 15 feet sometimes. You had a certain stretch in back of your bench you worked. That was the line you had. Maybe you would carry over into the next man's floor a little bit. It was according to what you were running; it varied.

"*Q.* Somebody else took them off the floor and took them away?

"*A.* No, sir; I helped dump my own molds.

"*Q.* Did you help to do that?

"*A.* Yes.

"*Q.* When you were dumping your own molds, what did that consist of?

"*A.* That consisted of one man on each end of the mold and you lift them and take them over to your pile and dump them into the pile where they are shook out.

"*Q.* Did you do any of the shakeout work?

"*A.* Sometimes.

"*Q.* What does the shakeout consist of?

"*A.* Shaking, jerking it loose, getting the hot sand off the castings and pulling them out so they are out of the sand."

There was medical testimony to the effect that there was a causal relation between plaintiff's work as a molder lifting and carrying the heavy molds and his resulting disablement from doing the work in which he was employed. The commission found that the plaintiff was entitled to compensation under subsection (c) of section 1, part 7, of the workmen's compensation act;[*] that he had sustained a disability due to causes and conditions characteristic of and peculiar to the business of the employer which arose out of and in the course of such employment. There was competent testimony to support the finding. See *Underwood* v. *National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co.*, 329 Mich 273, decided while appeal was pending in the instant case.

Affirmed.

North, C. J., and Dethmers, Carr, Bushnell, Sharpe, and Reid, JJ., concurred. Butzel, J., did not sit.

---

[*] CL 1948, § 417.1 (Stat Ann 1950 Rev § 17.220).