DRESSLER v GRAND RAPIDS DIE CASTING CORPORATION

Docket No. 58740. Argued October 5, 1977 (Calendar No. 13).—Decided February 27, 1978.

Joseph W. Dressler was awarded worker's compensation benefits against his last employer, Michigan Plating and Stamping Company, and its insurer, Corporate Service, Inc. Michigan Plating argues that the plaintiff's disabling back condition resulted from a fall during his earlier employment with defendant Grand Rapids Die Casting Corporation and that the defendant was not entitled to recover worker's compensation benefits from Michigan Plating because he falsely represented to them in his application for employment that he had not previously been treated for back trouble. The Court of Appeals, D. F. Walsh, P. J., and T. M. Burns and Allen, JJ., denied leave to appeal (Docket No. 28465). Defendants Michigan Plating and Stamping Company and Corporate Service, Inc., appeal. *Held:*

1. Plaintiff injured his back while employed by Grand Rapids Die Casting Corporation. The evidence reasonably accepted by the Workmen's Compensation Appeal Board, however, shows that the plaintiff was able to perform his regular duties within a short time of the initial injury and later was able to work at other suitable jobs with only varying degrees of discomfort from his back condition. An injury and the resulting pain do not necessarily create a disability. The plaintiff in the instant case was not disabled until the pain caused his excessive absence from work at Michigan Plating and termination of his employment there.

2. The rule in successive-injury worker's compensation cases is to place full liability upon the insurance carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability. This is consistent with the general principle of the compensability of the aggravation of a preexist-

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 565–569.
[2] 82 Am Jur 2d, Workmen's Compensation § 240 *et seq.*
[3] 82 Am Jur 2d, Workmen's Compensation §§ 344, 345.
[4–6, 9] 82 Am Jur 2d, Workmen's Compensation § 333.
[7, 8] 81 Am Jur 2d, Workmen's Compensation § 57.

ing condition. The findings of fact of the Workmen's Compensation Appeal Board that the plaintiff's employment at Michigan Plating contributed independently to his disability is supported by competent evidence and therefore cannot be disturbed on appeal.

3. Recovery of worker's compensation benefits is precluded under the statute for wilful failure to disclose to an employer a preexisting occupational disease, not for failure to disclose a preexisting condition caused by a traumatic injury. The plaintiff had no trouble with his back prior to his fall even though he had worked at the same occupation for two years before the injury. His condition commenced with a single-event injury and, despite relatively continuous pain, he was not disabled from working until almost two years later. The finding of the Workmen's Compensation Appeal Board that the plaintiff's undisclosed back condition was caused by a traumatic injury and its aggravation, rather than being an occupational disease, is supported by competent evidence. Therefore, the plaintiff is not precluded from recovering benefits by his failure to disclose his preexisting back condition.

Justice Coleman, with Justices Fitzgerald and Ryan concurring, voted to remand to the Workmen's Compensation Appeal Board to make a factual determination whether Michigan Plating relied upon the plaintiff's misrepresentations in hiring him.

1. The argument that the Legislature decided to permit misrepresentation of a prior condition for single injury and aggravation cases and not to permit it in occupational disease cases, for which the bar of misrepresentation is specifically mentioned, is not persuasive. The statute also provides that compensation is barred where the notice of injury of a claimant is shown to have been made with the intention to mislead and the employer or insurance carrier was in fact misled. The Court should not presume a legislative policy that permits fraud where fraud is not expressly forbidden.

2. A false statement as to a worker's physical condition in his employment application will bar payment of workmen's compensation benefits where (1) the false representation was made knowingly and wilfully, (2) the employer relied on the false representation and the reliance was a substantial factor in the hiring, and (3) there was a causal connection between the false representation and the injury.

3. Aside from any judicial interpretation of the Worker's Disability Compensation Act, it is improper for the Court to

condone fraud. Fundamental fairness alone should compel some opportunity for the employer's relief in the instant case. The record amply supports the allegation that the plaintiff knowingly and wilfully misrepresented his physical history on the application and that there was a causal connection between the false representation and the disability claim. If the Workmen's Compensation Appeal Board finds that Michigan Plating substantially relied on the misrepresentation in hiring the plaintiff, it should deny workmen's compensation benefits.

Affirmed.

### OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—DISABILITY—FINDINGS OF FACT—APPEAL AND ERROR.

   Determinations by the Workmen's Compensation Appeal Board of whether a disability exists and whether an employment aggravated a preexisting condition to the point of disability are findings of fact, which are conclusive if supported by competent, material and substantial evidence in the record (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

2. WORKMEN'S COMPENSATION—DISABILITY—BACK INJURY.

   A worker was properly found by the Workmen's Compensation Appeal Board not to be disabled by a back injury suffered in his employment, despite the relatively continuous pain he suffered in his successive jobs, until the pain caused his excessive absence from work and termination of his employment where the finding of fact was supported by competent evidence in the record (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

3. WORKMEN'S COMPENSATION—DISABILITY—SUCCESSIVE INJURIES.

   The rule in successive injury cases is to place full liability upon the workmen's compensation insurance carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability; this is consistent with the general principle of the compensability of the aggravation of a preexisting condition (MCL 418.301[1]; MSA 17.237[301][1]).

4. WORKMEN'S COMPENSATION—PREEXISTING CONDITION—OCCUPATIONAL DISEASE—WILFUL NONDISCLOSURE.

   Recovery of workmen's compensation benefits is precluded under the statute for wilful failure to disclose to an employer a preexisting occupational disease, not for failure to disclose a preexisting condition caused by a traumatic injury (MCL 418.301[1]; MSA 17.237[301][1]).

5. Workmen's Compensation—Preexisting Condition—Occupa-
   tional Disease—Wilful Nondisclosure.

A finding of the Workmen's Compensation Appeal Board that a
worker's back condition was caused by a traumatic injury and
not an occupational disease was not reversibly erroneous where
the worker had no back trouble before he fell on the job even
though he had worked at the same job for two years before the
injury, and was able to continue working at similar jobs for two
years after the injury despite relatively continuous pain; there-
fore, the worker was not precluded from recovering workmen's
compensation benefits by his wilful failure to disclose his
preexisting back condition to his last employer in his applica-
tion for employment (MCL 418.431; MSA 17.237[431]).

Separate Opinion by Coleman, J.

Fitzgerald and Ryan, JJ.

6. Workmen's Compensation—Employment Application—Preexist-
   ing Condition—Wilful Nondisclosure.

*A false statement in an employment application by an employee
as to his physical condition will bar recovery of workmen's
compensation benefits where (1) the employee knowingly and
wilfully made the statement, (2) the employer relied upon the
statement and the reliance was a substantial factor in the
hiring, and (3) there was a causal connection between the
statement and the injury.*

7. Workmen's Compensation—Statutes—Fraud—Legislative Pol-
   icy.

*A provision of the Worker's Disability Compensation Act which
bars compensation when a notice of injury is shown to be made
with the intention to mislead and when the employer or carrier
was in fact misled indicates a legislative policy against fraud
and need not be repeated in each section of the act; a court
should not presume that a statute permits fraud where the
Legislature does not expressly forbid fraud (MCL 418.383; MSA
17.237[383]).*

8. Workmen's Compensation—Fraud.

*It is improper for a court to condone fraud in a claim for
workmen's compensation benefits aside from any interpretation
of the Worker's Disability Compensation Act (MCL 418.101 et
seq.; MSA 17.237[101] et seq.).*

9. WORKMEN'S COMPENSATION—PREEXISTING CONDITION—WILFUL
    NONDISCLOSURE—FALSE STATEMENT TO OBTAIN EMPLOYMENT.

   *A worker's claim for workmen's compensation benefits for a
   single injury and subsequent disability from work-related ag-
   gravation of a preexisting condition should be remanded to the
   Workmen's Compensation Appeal Board solely to afford the
   employer an opportunity to show that it substantially relied on
   the worker's knowing misrepresentation of his previous condi-
   tion in hiring him where the record amply supports the conten-
   tion that the worker made the misrepresentation and that
   there was a causal connection between the false statement and
   the disability claim, and where the Workmen's Compensation
   Appeal Board has not made a finding on the employer's possi-
   ble reliance on the statement.*

*Arsulowicz & Meana (Robert N. Swartz,* of coun-
sel) for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R.
Mather)* for defendants Grand Rapids Die Casting
Corporation and Insurance Company of North
America.

*Cholette, Perkins & Buchanan (Edward D.
Wells,* of counsel) for defendants Michigan Plating
and Stamping Company and Corporate Service,
Inc.

WILLIAMS, J. Defendants, Michigan Plating and
Stamping Company and Corporate Service (herein-
after referred to as Michigan Plating), appeal from
an award of worker's compensation benefits to
plaintiff, Joe W. Dressler, and raise two issues: (1)
did the Worker's Compensation Appeal Board
(hereinafter WCAB) err in finding that plaintiff's
employment at Michigan Plating aggravated his
back condition to the point of total disability
rather than finding his disability resulted from a
fall during his earlier employment with Grand
Rapids Die Casting Corporation, and (2) was plain-
tiff suffering from an occupational disease prior to

his employment with Michigan Plating and, therefore, barred from recovering from Michigan Plating by MCLA 418.431; MSA 17.237(431), because he wilfully and falsely represented in his application for employment that he had not previously been treated for back trouble?

We find there was competent evidence to support the findings of the WCAB that (1) plaintiff's employment at Michigan Plating aggravated his back condition to the point of total disability, and (2) plaintiff is not barred from recovery from Michigan Plating by MCLA 418.431; MSA 17.237(431) because that bar relates exclusively to misstatement relative to a prior occupational disease and has no application to a misstatement relative to a prior single-event injury. Judgment is affirmed.

## I—FACTS

Plaintiff began working at Grand Rapids Die Casting Corporation, codefendant in this action, in September, 1966. His job consisted of lifting and polishing small and large metal parts. On Friday, June 7, 1968, plaintiff fell at work and injured his spine about two inches above his belt. He reported the fall immediately but did not see a company doctor until his return to work on Monday, June 10.

Dr. Kempers, to whom he reported on that date, prescribed pain pills and returned plaintiff to work with a "slip" ordering that he do no heavy lifting. Plaintiff returned to work immediately, but was told there was no light work available. He did not return to work again until the week ending June 30, at which time he was given light work which he continued to do for a period of three weeks.

Subsequently, plaintiff was placed back at his

regular duties which continued for another week or two until he quit in August, 1968. During this period he suffered varying degrees of back pain. There is some testimony to the effect that plaintiff left his employment because his wages were being garnished and he wanted to look for a better job.

On September 30, 1968, plaintiff began the same type of work at Apex Polishing Company, which caused him less discomfort than his prior job because he was able to get up and walk around to relax his back during the course of work. Plaintiff was laid off by Apex in January, 1969, but that same month was able to secure a job at Ronel's Manufacturing Company, again doing polishing.

In June, 1969, plaintiff was laid off by Ronel's, and applied for work at Pridgeon & Clay, but was rejected after a pre-employment physical examination.

In August, 1969, plaintiff applied for work with defendant, Michigan Plating. While filling out his employment application, plaintiff responded to the question, "[h]ave you ever been treated for a back condition?" in the negative. Plaintiff later admitted during testimony that he knew this answer to be untrue, and that he gave it for the purpose of obtaining a job. He began work on August 11, 1969, as a "racker", lifting bumpers off a rack and polishing them.

While in the employ of Michigan Plating, on January 9, 1970, plaintiff suffered a fall at home in which he injured his upper back. This incident, however, was characterized as not significant in light of plaintiff's total back pathology by defendant's expert witness, Dr. Glessner: "I'm not stating that the fall [of January 9, 1970] couldn't have had something to do with it, but I think the fall had less to do with it than the lifting activities."

Approximately a week after the fall, there was a layoff at Michigan Plating and plaintiff was not called back to work until March of 1970. After resuming work, plaintiff began to be absent frequently, and did not return to work after April, 1970. On May 15, 1970, he was formally discharged by Michigan Plating.

On June 8, 1970, plaintiff filed his petition for hearing alleging that he was disabled due to a fall in 1968 and the "repeated trauma in the course of his employment" at Michigan Plating.

The hearing referee found that plaintiff had suffered a personal injury aggravated to the point of total disability while in the employ of Michigan Plating and awarded compensation to be paid by appellant as the last employer. The appeal board unanimously affirmed on April 6, 1976 and the Court of Appeals denied leave to appeal on July 29, 1976. Leave to appeal was granted by this Court on April 22, 1977.

## II—STANDARD OF REVIEW

Findings of the Worker's Compensation Appeal Board regarding whether a disability exists, *Barrett v Bohn Aluminum & Brass Co,* 69 Mich App 636, 639–640; 245 NW2d 147 (1976), and whether a particular employment has aggravated a condition to the point of disability are findings of fact. *Gilbert v Reynolds Metals Co,* 59 Mich App 62, 65; 228 NW2d 542 (1975). If supported by competent, material and substantial evidence in the record, such findings are conclusive. *Carter v Kelsey-Hayes Co,* 386 Mich 610, 615; 194 NW2d 326 (1972); *Coates v Continental Motors Corp,* 373 Mich 461, 466–467; 130 NW2d 34 (1964).[1] This

_____

[1] This rule is so basic as to be found in the Michigan Constitution:
"Findings of fact in workmen's compensation proceedings shall be

Court must therefore examine the issues raised on appeal under the above standard of review.

## III—DATE OF DISABILITY

Defendant Michigan Plating asserts that plaintiff was "disabled from carrying on his employment at Grand Rapids Die Casting Corporation [his original employer] and accordingly was thereafter disabled from heavy work", and that therefore Grand Rapids Die Casting should be held liable for the payment of compensation.

If plaintiff were disabled from the time of his employment at Grand Rapids Die Casting, and this *same* disability continued through the time of his subsequent employment at Michigan Plating, defendant's assertion would be correct, *Mullins v Dura Corp,* 46 Mich App 52; 207 NW2d 404 (1973). However, the meaning of "disability", in conjunction with the facts of this case, establishes that there was competent evidence by which the WCAB could find that plaintiff was disabled on the last day of his employment with Michigan Plating.

Although what constitutes compensable disability is a factual determination and can vary with the circumstances of a particular case, of interest is Larson's treatise on worker's compensation which describes compensable disability as the "inability, as the result of a work-connected injury, to perform or obtain work suitable to the claimant's qualifications and training". 2 Larson, Workmen's Compensation Law, § 57.00. Larson goes on to

conclusive in the absence of fraud unless otherwise provided by law." Const 1963, art 6, § 28, and the Worker's Disability Compensation Act:

"The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. * * * " MCLA 418.861; MSA 17.237(861).

explain "that the distinctive feature of the compensation system * * * is that its awards (apart from medical benefits) are made not for physical injury as such, but for 'disability' produced by such injury". Larson, *supra,* § 57.10 (authority omitted).

There is no question that plaintiff sustained a physical injury to his back while in the employ of Grand Rapids Die Casting, and according to the opinion of the WCAB, this "single-event traumatic injury * * * resulted in immediate disability thereafter". However, the facts as reasonably accepted by the WCAB demonstrate that within a short time of the fall plaintiff was able to perform his regular duties at Grand Rapids Die Casting. Further, within a short time from termination of his employment at Grand Rapids Die Casting, plaintiff was not only able but did in fact obtain work suitable to his qualifications and training, and was able to perform such work, albeit with various degrees of discomfort from his pre-existing back condition.

According to defendant's own statement of the facts of this case, plaintiff did the same type of work at Apex as he had done at Grand Rapids Die Casting. The termination of that employment was due to a layoff and not inability to perform the required work. The same pattern of employment, ability to perform, and economic layoff occurred at Ronel's. These facts support a finding by the WCAB that plaintiff was not disabled during this period.[2]

---

[2] Defendant relies on *Mullins v Dura Corp, supra,* to support its claim that Grand Rapids Die Casting should be liable. In that case the dispute involved only one employer, but two insurance companies, one claiming disability dated from the date of the original back injury and the other from the last day of work. The Court of Appeals affirmed the WCAB finding that the disability dated from the time of the original injury, despite the fact that the plaintiff continued to work. The case is distinguishable from the instant situation because

Further, although plaintiff suffered pain during substantially all of his employment from the time of his initial injury, the existence of an injury and pain therefrom do not necessarily create disability. As quoted above, "the distinctive feature of the compensation system * * * is that its awards (apart from medical benefits) are made not for physical injury as such, but for 'disability' produced by such injury". Plaintiff was not disabled, despite the pain suffered in his successive jobs, until the pain became so extreme as to force his excessive absence from work at Michigan Plating, and his employment there was terminated.

When aggravation of an injury involves successive employers as in the instant case, the rule is clear:

" 'The Massachusetts-Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.

" 'If the second injury takes the form merely of a recurrence of the first, and if the second incident *does not contribute even slightly* to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of his crutches which his first injury requires him to use. This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

" 'On the other hand, if the second incident contrib-

in *Mullins* the plaintiff never returned to his regular duties but performed only favored work.

utes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition.' 3 Larson, Workmen's Compensation Law, § 95.12, pp 508.130–508.133." *Mullins v Dura Corp, supra,* 55–56. (Emphasis changed.)

See *Gilbert v Reynolds Metals Co,* 59 Mich App 62, 65; 228 NW2d 542 (1975).

The ultimate finding by the WCAB was

"that plaintiff's subsequent employment with defendant Michigan Plating and Stamping aggravated his preexisting back condition and injury to the point of total disability on and after his last day of work on April 24, 1970."[3]

We do not say that all evidence in this case dictates the WCAB finding, but, under the applicable standard of review, the findings of facts of the WCAB that employment at Michigan Plating contributed independently to the injury are supported by competent evidence and therefore cannot be disturbed by this Court.

---

[3] See MCLA 418.301(1); MSA 17.237(301)(1):

"An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation in the manner and to the extent provided in this act, or in case of his death resulting from such injuries the compensation shall be paid to his dependents as defined in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death."

See also *Smith v Lawrence Baking Co,* 370 Mich 169, 175; 121 NW2d 684 (1963).

### IV—WAS PLAINTIFF'S BACK CONDITION AN OCCUPATIONAL DISEASE BRINGING HIM WITHIN THE PURVIEW OF MCLA 418.431; MSA 17.237(431)?

Defendant Michigan Plating contends that regardless of when the injury is deemed to have occurred, plaintiff is barred from recovery from it by MCLA 418.431; MSA 17.237(431), which reads in part:

"No compensation shall be payable for an *occupational disease* if the employee at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, or thereafter, wilfully and falsely represents in writing that he has not previously suffered from the *disease* which is the cause of the disability or death." (Emphasis added.)

As stated in part I of this opinion, plaintiff did not disclose his prior back problem in the employment application to Michigan Plating, despite the fact that the application contained the question, "[h]ave you ever been treated for a back condition?" Plaintiff admitted in his testimony that he intentionally answered in the negative to increase the probability of obtaining employment.

MCLA 418.431; MSA 17.237(431) precludes the recovery of compensation only when there has been wilful nondisclosure of an occupational disease. Plaintiff asserts that his prior back condition was a traumatic injury and not an occupational disease; the WCAB agreed:

"Plaintiff sustained a previous single-event injury to his back (compensable by virtue of chapter 3) during the course of his employment with Grand Rapids Die Casting. Plaintiff had a prior back injury but not an occupational back *disease* (chapter 4) and therefore § 418.431 is not applicable."

The question of medical causation of plaintiff's disability is a question of fact, *Galac v Chrysler Corp,* 63 Mich App 414, 416; 235 NW2d 359 (1975), as is a determination that an injured employee's disability results from a single-event injury and subsequent aggravation, as opposed to an occupational disease, *Morgan v Win Schuler's Restaurant,* 64 Mich App 37, 40; 234 NW2d 885 (1975). Because the findings of the appeal board as to these factual determinations are supported by competent evidence, we affirm.

In 1937, the following definition of "occupational disease" was added to part VII, now chapter 4, of the Worker's Disability Compensation Act:

"Sec. 1. Definition. Whenever used in this act:

\* \* \*

"(c) The term 'occupational disease' means a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment." 1937 PA 61, part VII, § 1.

The present act does not clearly define occupational disease, but Professor Larson explains the terminology as follows:

"Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date." 4 Larson, Workmen's Compensation Law, § 95.21.

Defendant cites a limited number of cases in which back disabilities have been found to be occupational diseases. *Smith v Lawrence Baking Co,* 370 Mich 169; 121 NW2d 684 (1963); *Fields v G M Brass & Aluminum Foundry Co,* 332 Mich 113; 50 NW2d 738 (1952); *Underwood v National Motor Castings Division, Campbell, Wyant & Can-*

*non Foundry Co,* 329 Mich 273; 45 NW2d 286 (1951). Each of these cases involve situations where the plaintiff's back condition arose gradually because of long and repeated bending, twisting, or lifting, even though there might also have been an incidental trauma.

In the instant case, plaintiff had no back problems prior to his fall even though he had engaged in the particular occupation for almost two years. His condition commenced with a single-event injury and despite relatively continuous pain, he was not disabled from working until, almost two years later, the strenuous tasks in the course of his employment at Michigan Plating caused his condition to degenerate to a point of total disability. Under these circumstances, it was not error for the Worker's Compensation Appeal Board to find that plaintiff was not suffering from an occupational disease.

While we can appreciate defendant employer's frustration at having employed plaintiff under a false belief arising from his misrepresentation, and now being held liable for his worker's compensation benefits, as well as plaintiff employee's compulsion to misrepresent in order to secure a livelihood, the fact of the matter is that *the statute in this case does not permit the employer to avoid compensation payments.* MCLA 418.431; MSA 17.237(431) is specifically limited in its effect and the findings of the WCAB as to the statute's non-applicability to the facts of this case are supported by competent evidence.

## V—CONCLUSION

We hold that there was competent evidence to support the findings of the WCAB that (1) plaintiff's prior back condition was aggravated to the

point of total disability as of his last day of work with appellant, Michigan Plating, and (2) plaintiff was not suffering an occupational disease and therefore is not precluded from recovery of worker's compensation benefits by MCLA 418.431; MSA 17.237(431).

Affirmed. No costs.

Kavanagh, C. J., and Levin and Blair Moody, Jr., JJ., concurred with Williams, J.

Coleman, J. *(to remand).* The intriguing effect of my colleague's opinion is that it now legally pays to lie—and it is the consumer who bears the cost. We cannot attribute to the Legislature the intent to approve fraud nor do we find it appropriate for Michigan's highest court to condone and invite fraudulent misrepresentation.

## I

Plaintiff's back problems began on June 7, 1968 when he fell while working for Grand Rapids Die Casting. He quit in August, because of back pain.

After working for two other employers (where the pain continued) and being refused by a third after a physical examination revealed his back condition, he applied for work with defendant Michigan Plating and Stamping Co.

By his own testimony, plaintiff deliberately and intentionally falsified his application regarding his back condition.[1] He was hired by defendant and

---

[1] A portion of plaintiff's testimony regarding his claim against defendant-appellant was:

"*Q.* Now, Mr. Dressler, in August of 1969, you sought employment with Michigan Plating, isn't that correct?

"*A.* Yes.

"*Q.* And you knew at that time that you had a back problem?

"*A.* Yes.

worked off and on for about eight months with diminishing attendance before he quit, again because of back pain. He then filed a claim for total disability. The Workmen's Compensation Appeal Board (WCAB) found Michigan Plating and Stamp-

"*Q.* You knew at that time that you had treated for a back problem?

"*A.* Yes.

\* \* \*

"*Q.* Mr. Dressler, you knew, when you filled out your application for employment with Plating, that you had just recently taken a preemployment physical for another employer?

"*A.* Yes.

\* \* \*

"*Q.* You knew the reason that you were not hired, didn't you?

"*A.* Yes.

"*Q.* That was because of the back condition which you had?

"*A.* Yes."

Plaintiff was then shown the employment application he completed for defendant:

"*Q.* Mr. Dressler, directing your attention to this sentence right here—'Have you ever been treated for a back condition?'—you indicate that you had not been treated for a back condition, isn't that correct?

"*A.* That's right.

"*Q.* Now, was that true at the time that it was made?

"*A.* No.

"*Q.* And it isn't true now, is it?

"*A.* What?

"*Q.* That you had never been treated for a back condition?

"*A.* At—'Have you ever been?' Yeah. I have been treated for a back condition.

"*Q.* And, as of the date that you filled out this application for Michigan Plating and Stamping, you had been treated for a back condition?

"*A.* I seen doctor. Yeah.

"*Q.* And you indicated on the application that you had not been treated?

\* \* \*

"*A.* Yes.

"*Q.* Then I suspect that this was done for the purpose of obtaining the job, is that correct?

"*A.* Pardon?

"*Q.* This was done for the purposes of obtaining the job?

"*A.* Yes."

ing liable for the full costs. The Court of Appeals denied leave to appeal.

## II

The WCAB and Justice WILLIAMS assume that fraud is not a bar to compensation unless it is pursuant to a claim based on an occupational disease. The theory is that, because the bar of misrepresentation is specifically mentioned regarding occupational disease[2] and it is not mentioned as the act addresses a single injury and subsequent disability,[3] fraud is not a bar to recovery in the latter circumstances.

It strains credibility to conclude that the Legislature deliberated and decided to permit misrepresentation in single injury/aggravation cases and not permit it in occupational disease cases.

## III

As the body of workmen's compensation law grew through the years, other states were confronted by similar problems which Professor Larson addresses in his treatise on Workmen's Com-

---

[2] "No compensation shall be payable for an occupational disease if the employee at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, or thereafter, wilfully and falsely represents in writing that he has not previously suffered from the disease which is the cause of the disability or death." MCL 418.431; MSA 17.237(431).

[3] "(1) An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation in the manner and to the extent provided in this act, or in case of his death resulting from such injuries the compensation shall be paid to his dependents as defined in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death." MCL 418.301; MSA 17.237(301).

pensation Law. He notes that several states apply
a

"common-sense rule made up of a mélange of con-
tract, causation, and estoppel ingredients. The following
factors must be present before a false statement in an
employment application will bar benefits: (1) The em-
ployee must have knowingly and wilfully made a false
representation as to his physical condition. (2) The
employer must have relied upon the false representa-
tion and this reliance must have been a substantial
factor in the hiring. (3) There must have been a causal
connection between the false representation and the
injury". 1A Larson, Workmen's Compensation, § 47.53,
pp 8-201–8-202.

Delaware was one of the first jurisdictions to
apply this rule. The worker in *Air Mod Corp v
Newton,* 59 Del 148; 215 A2d 434 (1965), had a
long history of back trouble which resulted in
surgery during the spring of 1959. In September,
he applied for work with Air Mod denying that he
had "any physical defect or chronic disease" or
that he had "been confined by illness in [the] past
year".

The worker was employed by Air Mod for 15
months when he fell and injured his back. He quit
work in March, 1961, underwent more surgery and
then filed a claim for benefits in October, 1962.

The Delaware Supreme Court found defendant's
answers on the employment application to be
"false and misleading". The Court addressed itself
"to the consequences of such misrepresentation
upon the plaintiff's right to workmen's compensa-
tion benefits". Although it was "not aided by an
explicit provision of the Workmen's Compensation
Act", the Court did note Delaware's Second Injury
Fund and apportionment provisions "are premised
upon an employer's knowledge of an employee's

prior injury, disease or infirmity". Concealing these "may, unfairly and even fraudulently, deprive an employer of the benefits accorded him by law".

Based upon its review of public policy, case law, "and principles of fairness and justice", the Court held that an employee would forfeit his right to benefit if in applying for work, he

"(1) knowingly and wilfully made a false representation as to his physical condition; and (2) the employer relied upon the false representation and such reliance was [a] substantial factor in hiring; and (3) there was a causal connection between the false representation and the injury".[4]

The Florida Supreme Court made a similar analysis in *Martin Co v Carpenter,* 132 So 2d 400 (Fla, 1961). The worker had a back problem for 20 years which he concealed by falsely answering questions on an employment form. The Florida statutes did not speak to this situation. The Court adopted the rule that such false representations

"will preclude [benefits] if there is shown to be a causal relationship between the injury and the false representation and if it is also shown that (1) the employee knew the representation to be false, (2) the employer relied upon the false representation; and (3) such reliance resulted in consequent injury to the employer".[5]

Wisconsin has followed a similar path. It has a legislative policy to encourage the hiring of epileptics by allowing them to elect not to be covered by workmen's compensation. In *Volunteers of America of Madison, Inc v Industrial Commission,* 30

---

[4] Also see *Martinez v Driver Mechenbier, Inc,* 90 NM 282; 562 P2d 843 (Ct App, 1977).

[5] Also see *Miami v Ford,* 252 So 2d 228 (Fla, 1971), and *Homestead v Watkins,* 285 So 2d 394 (Fla, 1973).

Wis 2d 607; 141 NW2d 890 (1966), the worker, an epileptic, indicated on an employment form that he did not have a history of seizures or fainting spells. At a physical examination, he did not tell the doctor about the epilepsy.

The worker drowned while working at a camp run by the Volunteers. The Court said that "implicit" in the state policy "is the requirement that the employee will not fraudulently conceal his epileptic condition from his employer". Such a concealment would preclude benefits. The Court remanded to determine if the epilepsy contributed to the drowning.

The Tennessee Workmen's Compensation Act also contains no provision for a fraudulent misrepresentation of physical condition to obtain employment. Prior to *Federal Copper & Aluminum Co v Dickey,* 493 SW2d 463 (Tenn, 1973), there was no case law either. Dickey had failed to declare previous back trouble. He injured his back while working for Federal.

The Tennessee Supreme Court said the statutory provisions on occupational disease and second injuries "[evidence] a general policy against" the worker's conduct. The Court found an employee

"who has wilfully misrepresented or failed to disclose material information regarding his physical condition should not be permitted a recovery in a workmen's compensation case merely because the legislature failed to anticipate the problem".

The Court adopted Professor Larson's analysis.[6]

[6] Also see *Haddix v Day & Night Manufacturing Co,* 540 SW2d 639 (Tenn, 1975), and *Daniels v Gudis Furniture Co,* 541 SW2d 941 (Tenn, 1976) ("The causal connection required is a factual showing that the injury upon which the * * * claim is based is causally related to the employee's prior injuries or physical condition which were wrongfully concealed from the employer.")

Finally, there is the South Carolina Supreme Court's decision in *Cooper v McDevitt & Street Co,* 260 SC 463; 196 SE2d 833 (1973). The worker had a serious back injury in 1967. He was employed by McDevitt & Street in 1970 for work on a project in Charleston. The worker told the company about his back problem. He was laid off in December, 1970.

In January, 1971, the worker traveled to Columbia, South Carolina, to see about work on another McDevitt & Street project. He filed a new employment application but this time concealed his back problems because "if they knew it up here, I was going to get fired off the job". He was disabled by his back trouble in February.

In a 3 to 2 decision, the South Carolina Supreme Court denied benefits. The supervisor in Columbia testified that he did not have access to the Charleston records. He also said the worker would not have been hired if he had disclosed the prior injury. The Court cited Larson and held that "[t]here is ample evidence to sustain the finding * * * that the [worker] was guilty of fraud in securing his employment * * * and that the employer would not have hired him had he not misrepresented his physical condition".

## IV

The logic of Professor Larson and our sister states which have followed his "common-sense" analysis is persuasive. In addition to the plainly spoken legislative policy in occupational disease cases, we also note that compensation is barred when the notice of injury of a claimant is shown to contain "the intention to mislead, and the employer or the carrier, was in fact misled". MCL 418.383; MSA 17.237(383). As the Tennessee Court observed, those provisions alone are indicative of

the legislative policy and need not be repeated in
each section of the act. It is more likely that the
Legislature would be surprised to discover that
when it does not explicitly forbid fraud, we will
presume that statute to permit it.

## V

Aside from any judicial interpretation of the
Worker's Disability Compensation Act and its
predecessor, we are persuaded that it is improper
for this Court to condone fraud. Fundamental
fairness alone should compel us to reverse or to
adopt the Larson analysis.

We would adopt Professor Larson's guide. In this
case, the record amply supports the fact that
plaintiff knowingly and wilfully misrepresented
his physical history on the application and that
there was a causal connection between the false
representation and the disability claim.

The record is not so clear that the employer
"relied upon the false representation and this
reliance" was a "substantial factor in the hiring".
Plaintiff assumed that he would not have been
hired had he told the truth, but the WCAB made
no finding in support.

Because we agree that plaintiff did not suffer an
occupational disease within the meaning of the
statute, but would find it possible to rule that
plaintiff's claim is barred by fraud, we would
remand to the WCAB solely to afford Michigan
Plating and Stamping Co. the opportunity to show
it relied on the knowing misrepresentation in
hiring plaintiff and for WCAB to make a factual
determination accordingly. If the WCAB could
satisfy the Larson test, it should deny benefits to
plaintiff.

FITZGERALD and RYAN, JJ., concurred with COLE-
MAN, J.