DeVORES v FORD MOTOR COMPANY

Docket No. 106309. Submitted July 14, 1988, at Detroit. Decided September 7, 1988.

James E. DeVores, who was employed at a foundry of Ford Motor Company, filed a petition in the Bureau of Workers' Disability Compensation seeking the payment of benefits by Ford for a disabling lung disease. A hearing referee awarded benefits, determining that, although plaintiff's many years of prior employment at a Bethlehem Steel Company coal mine was a factor in plaintiff's medical condition, his employment at Ford aggravated, accelerated or contributed to his current disability. On appeal, the Workers' Compensation Appeal Board reversed the hearing referee's determination in a two-to-one decision, with the majority members agreeing to reverse for different reasons. One majority member concluded that plaintiff would be entitled to benefits had he not made false representations regarding the state of his health when he applied for employment by Ford. Plaintiff sought and was denied leave to appeal in the Court of Appeals. However, the Supreme Court remanded and ordered review by the Court of Appeals as on leave granted. 429 Mich 897 (1988).

The Court of Appeals *held:*

Section 431 of the Workers' Disability Compensation Act, MCL 418.431; MSA 17.237(431), provides that no compensation shall be payable for an occupational disease if the employee at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, or thereafter, wilfully and falsely represents in writing that he has not previously suffered from the disease which is the cause of the disability or death. In this case, a review of the record disclosed that plaintiff made no false representations regarding the state of his health, the nature of his prior employment and any restrictions thereof for health reasons, and the absence of any prior workers' compensation claims. Thus, when the erroneous determination that plaintiff was precluded from benefits on the

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 401, 613 *et seq.*
See the Index to Annotations under Workers' Compensation.

basis of false representation is disregarded, a new majority of panel members emerges, one which properly affirms the hearing referee's decision.

Reversed.

1. WORKERS' COMPENSATION — APPEAL — COURT OF APPEALS.

The Court of Appeals, in an appeal from a final order by the Workers' Compensation Appeal Board, reviews questions of law, determines whether there is any fraud associated with the findings of fact made by the appeal board, and determines whether there is evidence in the record to support the findings of fact (Const 1963, art 6, § 28).

2. WORKERS' COMPENSATION — PRIOR INJURIES — FALSE REPRESENTATIONS.

Workers' compensation benefits for an occupational disease are not payable where the worker, at the time of entering into employment or thereafter, wilfully and falsely represented that he has not previously suffered from the disease which is the cause of the disability for which he seeks benefits (MCL 418.431; MSA 17.237[431]).

*Stalburg, Fischer & Weberman, P.C.* (by *Michael J. DePolo*), for plaintiff.

*Alan S. Gorosh* and *Conklin, Benham, Ducey, Ottaway, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), of Counsel, for defendant.

Before: GRIBBS, P.J., and SHEPHERD and J. R. COOPER,* JJ.

SHEPHERD, J. Plaintiff appeals a June 16, 1987, order of the Workers' Compensation Appeal Board denying plaintiff further benefits. The two-to-one decision reversed a hearing referee's decision to award plaintiff benefits. This Court originally denied plaintiff leave to appeal. Plaintiff appealed to the Supreme Court. We now review the case pursuant to an order of the Supreme Court remanding as on leave granted. 429 Mich 897 (1988).

* Circuit judge, sitting on the Court of Appeals by assignment.

On April 18, 1980, plaintiff petitioned for workers' compensation benefits for a disabling lung disease he alleged was attributable to exposure to atmospheric pollutants at his place of work, defendant's foundry operation at Gibraltar. At the time of the February, 1981, hearing plaintiff was fifty-seven years old. Plaintiff had worked as a machine repairman from 1942 to 1970 for Bethlehem Steel Company in a coal mining operation in West Virginia. Plaintiff worked both in the mine and in a plant. In both places he was exposed to coal dust throughout the work day. In 1970 the coal mining operation was shut down. Plaintiff filed a claim for black lung benefits when the plant closed, as did all the mining operation employees. Plaintiff's claim was denied.

In 1973 plaintiff went to work for the Ford Motor Company as a machine repairman. In response to questioning at the workers' compensation hearing, he characterized his health at this time in the following way:

*Q.* Mr. DeVores, when you were working the coal mine and you took a long, deep breath, what would happen?

*A.* Well, at that time I don't know that anything would happen to me. I was in pretty good shape. I was in pretty good shape until '78.

*Q.* You weren't coughing working in the coal mine?

*A.* I don't cough yet today. I never knew anybody that had black lung that coughed too much.

\* \* \*

*Q.* (Interposing) Did you ever have any chest x-rays taken while you were working in the coal mines in West Virginia?

*A.* I was never sick a day in my life until I came up here. I was never in the hospital.

\* \* \*

> *Q.* Was your throat irritated when you worked down in the mines?
>
> *A.* No, not like it is now. No, I never had the problem until I came here in the last few years here at Ford's.

Plaintiff underwent a preemployment medical examination which included x-rays of his chest and lungs. The results of these tests were normal. A standard health questionnaire was filled out prior to plaintiff's hiring at Ford Motor Company. It is not clear from the record whether plaintiff filled in the answers or the answers were filled in in response to verbal questioning. Plaintiff responded "yes" when asked whether he had ever worked in a "dusty trade such as mining." He responded "no" when asked whether he had ever filed a state compensation claim due to industrial accident or disease; "no" to whether his work had ever been limited on account of his health; and "no" to whether he had any "physical complaints or disabilities."

Plaintiff first worked for the defendant in an area known as the central shop where he did machine repair work, and where the atmosphere was generally clean. After approximately a month, he was transferred to the molding line area. Plaintiff was there exposed to a working environment filled with smoke and dust. Plaintiff stayed on the molding line for approximately three years. From there, plaintiff was transferred to an area known as the cleaning room to perform machine repair work. The atmosphere in the cleaning room was worse than the molding line, and plaintiff was exposed to formaldehyde, dust particles from the grinding stone, oxide from the blocks, shot blast, hydraulic oil and diesel fumes. It is not disputed by defendant that plaintiff was exposed to atmos-

pheric pollutants and airborne substances. It is also undisputed that plaintiff engaged in heavy, albeit skilled, labor for some three years without medical complaint. In 1976, plaintiff went to the plant medical facility complaining of breathing difficulties. He was given a restriction to work only in a clean air environment. Although plaintiff was under restriction he continued to work wherever he was sent to repair machines, including areas outside of his restriction. Plaintiff indicated that he began to suffer real breathing difficulties in late 1977 or 1978. Plaintiff testified that he was sent to the plant medical facility, where he was treated by a company doctor who told him that his lungs "sounded like Niagara Falls" and the doctor all but suggested that he stop working. Plaintiff's last day of work with Ford Motor Company was in January of 1979.

Two medical evaluations were performed in conjunction with the workers' compensation proceedings. Dr. Sheldon Kaftan examined plaintiff in August of 1980. Dr. Clyde Wu's examination took place shortly thereafter. During his evaluation, Dr. Kaftan noted markedly diminished breathing sounds, a high pitched expiratory wheeze and heart sounds that were of low intensity. X-rays revealed marked calcific and fibrotic changes in both lung fields. Dr. Kaftan's diagnosis, in part, was that plaintiff suffered from advanced obstructive lung disease with pulmonary emphysema. Plaintiff was thought to be disabled from all but very sedentary employment. Dr. Kaftan concluded that the underlying lung disease was the result of plaintiff's numerous years in and near the coal mines. Many, if not most, of his findings were thought to have been causally related to that extended exposure. However, he also thought that more recent exposures had played an aggravating

role, given plaintiff's decline during the years preceding the evaluation. When assessing the impact of the occupational exposure during plaintiff's final years of employment, Dr. Kaftan concluded that such atmospheric pollutants had probably contributed to the plaintiff's disability.

Dr. Wu's diagnosis was chronic bronchitis, a progressive condition in which exposure to pulmonary irritants could be a causative factor. Despite Dr. Wu's acknowledgment that x-ray changes between 1973 and 1980 would probably be indicative of increased pathology, he declined to relate plaintiff's condition to any exposure other than that encountered in and around the coal mines and cigarette smoking. Plaintiff's five to six years employment at the Ford Motor Company were not thought to have played any role whatsoever. Dr. Wu seems to have been unaware of the atmospheric pollutant exposure encountered by plaintiff during this later employment. Because of plaintiff's medical condition, Dr. Wu concluded that he should not be further exposed to significant atmospheric pollutants.

On February 18, 1981, the hearing referee issued her decision. She granted plaintiff compensation, reasoning that "although plaintiff's many years of employment in the coal mines is a factor in his condition, his employment with defendant aggravated, accelerated and/or contributed to his current disability." The WCAB reversed in a two-to-one decision in which the members of the majority agreed to reverse for different reasons. One member of the board concluded that, while plaintiff would otherwise be entitled to benefits because the work activities at defendant's plant contributed to his disability, plaintiff was precluded from recovery because he falsely represented his prior disabling condition. MCL 418.431; MSA 17.237(431).

The other member of the majority found that plaintiff had not proved his case by a preponderance of the evidence. Plaintiff appeals.

This Court must review questions of law involved in any final order of the WCAB, determine whether there is any fraud associated with the findings of fact made by the WCAB, and determine whether there is any evidence in the record to support the findings of fact made by the WCAB. Const 1963, art 6, § 28; *Aquilina v General Motors Corp,* 403 Mich 206; 267 NW2d 923 (1978).

Plaintiff first argues that panel member Richardson erred in finding a violation of MCL 418.431; MSA 17.237(431). The statute reads in pertinent part:

> No compensation shall be payable for an occupational disease if the employee at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, or thereafter, wilfully and falsely represents in writing that he has not previously suffered from the disease which is the cause of the disability or death.

There is some controversy in the Michigan appellate courts as to the applicable test under the statute. In *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243; 262 NW2d 629 (1978), a four-member majority of the Supreme Court determined that this statutory provision precludes the recovery of compensation only when there has been wilful nondisclosure of an occupational disease. Because the plaintiff's disability in that case resulted from a single event injury, the statute was held not to bar recovery of compensation.

In *Leach v Detroit Health Corp,* 428 Mich 887 (1987), the Supreme Court, in lieu of granting leave to appeal, remanded to the WCAB for findings

of fact under the so-called "Larson rule" cited in Justice COLEMAN's opinion in *Dressler.* Under the Larson rule

> the following factors must be present before a false statement in an employment application will bar benefits:
> (1) The employee must have knowingly and wilfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury. [1B Larson, Workmen's Compensation Law, § 47.53, pp 8-201—8-202.]

In reading the language of MCL 418.431; MSA 17.237(431) the following elements would seem to be required: (1) wilful and false representations (2) in writing (3) that the claimant has not previously suffered from the disabling disease which constitutes the basis of his claim. The applicability of the Larson rule is not strictly important in this case since there is nothing in the record to support the conclusion that plaintiff made wilful or false misrepresentations. Plaintiff gave an answer in the affirmative to the question whether he had ever worked in a dusty trade such as mining. Although the panel member placed great importance on plaintiff's negative response to the question whether he had ever filed a state compensation claim due to industrial accident or disease, the answer was truthful. Plaintiff had indeed filed for black lung benefits, a federal program, not a *state* program and certainly not a Michigan state program. Both majority panel members made much of the fact that plaintiff "admitted" that he knew he was "sick" prior to being hired by the

Ford Motor Company. Plaintiff's full response to a question concerning how his lungs were feeling after he left Bethlehem was: "I was sick. I was—I knew the condition I worked under, and I knew what I was in for, *but I was still healthy.* I wasn't to the point that I couldn't do anything." (Emphasis added.) This response clearly suggests that plaintiff was aware that his coal mine work might some day have an adverse impact on his health. Certainly, Ford Motor Company was aware of this possibility because of plaintiff's affirmative response when asked whether he had ever worked in a dusty trade such as mining. Plaintiff did not hide the fact that he had worked in the coal mining industry for some twenty-eight years. There is no evidence in the record to suggest that plaintiff had ever suffered symptoms of lung problems. In fact, plaintiff's preemployment x-ray tests proved to be normal. Plaintiff went on to work some three years without medical complaint. The panel member further found subterfuge in plaintiff's response that he was not under any physical disability or would require a special work assignment if hired. In his workers' compensation hearing testimony, plaintiff indicated that "I was never sick a day in my life until I came up here. I was never in the hospital." We see nothing to support the conclusion that plaintiff wilfully or falsely misrepresented a prior disabling condition. Certainly there is no evidence suggesting that plaintiff suffered from symptoms of a significant breathing problem prior to being hired by Ford. We therefore reverse the holding of this panel member that plaintiff's claim is precluded by MCL 418.431; MSA 17.237(431).

Plaintiff next argues that the agreement of two members of the panel on the issue of whether plaintiff was entitled to benefits should control.

Assuming that plaintiff's claim is not barred by the wilful and false misrepresentation section of the act, plaintiff argues that the dissenting panel member and panel member Richardson agree that plaintiff is entitled to benefits because his Ford employment caused or contributed to his disability. Plaintiff thus argues that the decision of the two *on this issue* should control. We agree. In a case not precedentially binding since it was only a remand in lieu of granting leave to appeal, our Supreme Court stated:

> Leave to appeal is considered . . . and, . . . in lieu of granting leave to appeal, we remand the case to the Workers' Compensation Appeal Board for further proceedings. Appellate review of workers' compensation decisions *requires findings of fact and conclusions of law which have been adopted by a true majority of the Workers' Compensation Appeal Board.* See *Aquilina v General Motors Corp,* 403 Mich 206 (1978). *The three separate opinions for affirmance written by the appeal board members in this case each contain essential findings of fact and conclusions of law which were not approved by a majority of the board.* We retain no jurisdiction. [*Erickson v Ford Motor Co,* 413 Mich 918 (1982). Emphasis added.]

Given our present holding that there is no factual support for the finding by one panel member that plaintiff falsified his employment application, the only finding of fact agreed to by a majority of the board is that defendant's plant environment contributed to plaintiff's disability. On those facts plaintiff would be entitled to benefits. We now adopt the *Erickson* rationale as our own. Since a majority has found facts that would entitle plaintiff to benefits, we reverse the WCAB.

Reversed.