CHILCOTE v CADILLAC MALLEABLE IRON COMPANY

Docket Nos. 128893, 129002. Submitted August 12, 1992, at Lansing.
Decided February 1, 1993, at 9:50 A.M. Leave to appeal sought.

S. V. Chilcote, in June 1984, sought workers' compensation from
Cadillac Malleable Iron Company, his employer from 1954 until
September 30, 1981, when his union struck Cadillac. On Janu-
ary 18, 1982, Cadillac refused the union's offer to return to
work, and the strike apparently has never been resolved. In the
fall of 1984, Chilcote began working for a different employer
guarding Christmas trees. A hearing referee found that Chil-
cote was entitled to benefits for partial disability from June 11,
1982, two years before he filed his petition. The Workers'
Compensation Appeal Board modified the date that compensa-
tion was to commence, finding that Chilcote had forfeited his
right to compensation during the strike. The board then found
that Chilcote had shown that he was no longer refusing to
perform work, citing his testimony regarding the Christmas
tree job in 1984, and held him entitled to compensation from
the fall of 1984. Both parties appealed. The appeals were
consolidated.

The Court of Appeals *held:*

1. The defendant's argument that reversal is required be-
cause the board did not find that Chilcote had proven work-
related aggravation of his condition in a significant manner is
rejected. The "in a significant manner" test, added to MCL
418.301(2); MSA 17.237(301)(2) by 1980 PA 357, effective Janu-
ary 1, 1982, does not apply retroactively. The test applicable in
this case was whether the employment contributed "even
slightly" to the causation of the disabling condition.

2. In a case such as this where a strike never ends, an
injured employee is not barred forever from receiving compen-
sation during the strike. In order for the plaintiff to be entitled
to compensation benefits during the strike, in which he was a
voluntary participant, he must show that he informed Cadillac
of his willingness to return to work for Cadillac. His work for

REFERENCES

Am Jur 2d, Worker's Compensation §§ 31, 428.
See the ALR Index under Worker's Compensation.

other employers is not evidence that he is willing to return to work for Cadillac.

Reversed.

1. WORKERS' COMPENSATION — STATUTES — SIGNIFICANT AGGRAVA-
TION OF CONDITION — PROSPECTIVE APPLICATION.

The 1980 amendment of the Workers' Disability Compensation Act requiring that an employee must prove work-related aggravation of a condition "in a significant manner" before the condition may be found to be compensable does not apply retroactively from its January 1, 1982, effective date (1980 PA 357; MCL 418.301[2]; MSA 17.237[301][2]).

2. WORKERS' COMPENSATION — STRIKING WORKERS — VOLUNTARY
PARTICIPATION IN STRIKE.

An injured employee who is a voluntary participant of a strike against the employer must inform the employer of the employee's willingness to return to work for the employer in order to be entitled to workers' compensation during the strike; the fact that the employee accepts work with other employers is not evidence of willingness to return to work for the strikebound employer.

*Timothy J. Bott Law Offices, P.C.* (by *Timothy J. Bott*), for the plaintiff.

*Russell & Carowitz* (by *Rodney W. Fagerman*), for the defendant.

Before: MACKENZIE, P.J., and WAHLS and SULLIVAN, JJ.

MACKENZIE, P.J. In these consolidated appeals, the parties appeal by leave granted from an order of the Workers' Compensation Appeal Board that found plaintiff entitled to continuing benefits for partial disability from autumn of 1984 onward. We reverse.

The facts are undisputed. Plaintiff worked for defendant from 1954 until September 30, 1981, when a labor dispute resulted in a union strike against defendant. On January 18, 1982, defendant

refused the union's offer to return to work. Apparently, the strike has never been resolved.

In June 1984, plaintiff sought workers' compensation benefits, claiming specific work-related pulmonary and orthopedic injuries. In the fall of 1984, plaintiff began working as a Christmas tree guard and then as a checkout clerk at a convenience store. Plaintiff testified that he did not think he could return to the foundry work he performed for defendant.

A hearing referee found that plaintiff was partially disabled in unskilled employment, that he had established injury dates of October 19, 1979, March 3, 1981, and September 30, 1981, and that he was entitled to a continuing award of benefits commencing June 11, 1982, two years before he filed his petition.

The WCAB modified the date compensation was to commence. Like the hearing referee, the board found plaintiff partially disabled, but it found that he had forfeited his right to compensation during the strike, citing *Pigue v General Motors Corp,* 317 Mich 311; 26 NW2d 900 (1947), and *Jones v Auto Specialties Mfg Co,* 177 Mich App 59; 441 NW2d 1 (1988). Nevertheless, the board concluded that if plaintiff could show that he was no longer refusing to perform work that was within his capacity to perform and that he had an actual loss of wages due to his limitation in earning capacity that was clearly attributable to his prior work-related injury, he could collect compensation benefits. The board then found that plaintiff had made such a showing, citing his testimony that he had found a job guarding Christmas trees in the fall of 1984. It therefore held plaintiff entitled to compensation from the fall of 1984.

In its appeal, defendant first contends that the proofs were insufficient to show that plaintiff had

a work-related orthopedic or pulmonary disability. Specifically, defendant contends the WCAB's decision should be reversed because the board failed to find that plaintiff had proven work-related aggravation of his condition "in a significant manner." This argument is without merit. The "in a significant manner" test was added to § 301(2) of the Workers' Disability Compensation Act, MCL 418.301(2); MSA 17.237(301)(2), by 1980 PA 357, effective January 1, 1982. The amendment did not apply retroactively. *Norwin v Ford Motor Co*, 132 Mich App 790; 348 NW2d 703 (1984). There was no requirement before the 1980 amendment that the appeal board find that employment had contributed to the disability "in a significant manner." Rather, it was sufficient for imposition of liability if the employment contributed "even slightly" to the causation of the disabling condition. *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243; 262 NW2d 629 (1978); *Mullins v Dura Corp*, 46 Mich App 52; 207 NW2d 404 (1973). See also *Arnold v General Motors Corp*, 84 Mich App 713; 270 NW2d 504 (1978), and *Gibbs v General Motors Corp*, 114 Mich App 1; 318 NW2d 565 (1982).

The parties' remaining arguments focus upon whether the WCAB erred in concluding that plaintiff's participation in the union strike did not permanently bar him from receiving compensation benefits and, if plaintiff was not permanently barred, whether the WCAB erred in its determination of when his compensation should commence.

In *Pigue, supra,* the Supreme Court held that an employee who had been injured but performed favored work was not entitled to workers' compensation benefits for the period of his union's strike, in which he voluntarily participated. The Court reasoned that the employee's loss of earnings was not due to injury, but rather the employee's re-

fusal to work. Both parties contend that the WCAB improperly applied *Pigue* to the facts of this case.

Plaintiff contends that the *Pigue* Court's holding, that an employee is not entitled to compensation during his union's strike, does not apply because he was not performing favored work when the strike was called. Plaintiff further contends that, even if *Pigue* is applicable, it was wrongly applied by the WCAB because his union's January 18, 1982, offer to return to work was a constructive articulation of his willingness to return to work. Thus, plaintiff reasons that he was entitled to compensation on January 18, 1982, when he was constructively an involuntary striker. Defendant, on the other hand, contends that the WCAB erred as a matter of law in concluding that the *Pigue* forfeiture provisions applied only until the fall of 1984, when plaintiff sought alternative employment guarding Christmas trees. According to defendant, plaintiff's attempts to perform alternative employment did not suspend the forfeiture provisions of *Pigue,* and the *Pigue* forfeiture provisions continued to apply until plaintiff indicated a willingness to return to work within his capacity for defendant.

Plaintiff's claim, that *Pigue* should not apply because he was not performing favored work when he went on strike,. is without merit. In *Jones, supra,* this Court expressly found that *Pigue* applies equally to disabled workers not performing favored work. Nevertheless, neither the *Pigue* nor the *Jones* decision directly indicates the correct result in a case such as this where the strike never ends. We agree with the appeal board that the rationale of those cases does not require that plaintiff be barred forever from receiving compensation during the strike period. However, we disagree with the appeal board's contention that it is

sufficient to end the period of suspension to have the plaintiff simply no longer refuse to perform some work for some other employer that was within his capacity to perform. We think that at a minimum plaintiff, in order to be entitled to compensation benefits while a strike is ongoing and in which he is a voluntary participant, must show that he informed his strikebound employer of his willingness to return to work for that employer. Working for other employers is not evidence that plaintiff is willing to return to work for his strikebound employer.

In conclusion, we believe that the appeal board erred in its attempt to extend the application of the *Pigue* and *Jones* decisions to this case, where the strike never ended and plaintiff never notified defendant employer that he was willing to return to work. We are not suggesting that plaintiff could not still obtain compensation benefits from defendant for his partial disability; we do hold that he must notify defendant that he is willing to return to work before he is entitled to compensation.

Reversed.