## ARNOLD v GENERAL MOTORS CORPORATION

Docket No. 108178. Decided April 1, 1998. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals, and remanded the case to the Worker's Compensation Appellate Commission for further proceedings. Rehearing denied 457 Mich 1201.

Bernetta C. Arnold suffered a work-related back injury while employed by General Motors Corporation. Despite her disability, she performed lighter duty work, both for General Motors and, subsequently, for Suburban Mobility Authority for Regional Transportation (SMART). Her work for SMART aggravated her back condition to the point that she could no longer work. A hearing referee granted worker's compensation, finding both employers liable for benefits during certain periods. For the period following her employment with SMART, the referee concluded that the plaintiff was entitled to benefits based only on her later employment with SMART that aggravated her back condition. Bernetta Arnold appealed, but died during the pendency of the appeal, and Alice A. Arnold, executor of her estate, was substituted as plaintiff. The Worker's Compensation Appellate Commission, affirmed with modifications. The Court of Appeals, WEAVER, P.J., and MACKENZIE and SAWYER, JJ., denied leave to appeal in an unpublished order (Docket No. 174816). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals. 448 Mich 913 (1995). On remand, the Court of Appeals, HOOD, P.J., and GRIFFIN, J. (J. F. FOLEY, J., concurring in part and dissenting in part), affirmed, holding that the provision of the Worker's Disability Compensation Act governing benefits to disabled workers who have engaged in subsequent employment, MCL 418.301(5)(e); MSA 17.237(301)(5)(e), does not apply when the subsequent employment aggravates the prior condition (Docket No. 185213). The plaintiff seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court held:

Because the plaintiff was disabled by her injury at General Motors, and her subsequent employment was in the nature of favored work, she is entitled to benefits from General Motors based on her wage at the time of the original injury.

Subsection 301(5) applies to persons who are disabled, but nonetheless obtain other employment. Because the plaintiff worked less than one hundred weeks after her injury at General Motors, under subsection 5(e) she did not establish a new wage-earning capacity and was entitled to receive compensation based on the wage at the original date of injury. Section 301(5)(e) designates the wage at the original date of injury as the basis for setting benefits. Under the circumstances of this case, the statute contemplates that the original employer is to pay benefits computed using wages at the time of the original injury.

Reversed and remanded.

220 Mich App 494; 560 NW2d 59 (1996) reversed.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Rosemary E. Jabbour*) for the plaintiff.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for the defendant.

PER CURIAM. Bernetta Arnold[1] suffered a work-related injury while employed by defendant General Motors Corporation. Despite her partial disability, she performed lighter duty work, both for General Motors and for a subsequent employer, Suburban Mobility Authority for Regional Transportation (SMART). Her work for SMART aggravated a back condition to the point that she could no longer work.

The issue raised by the present appeal is whether, under subsection 301(5) of the Worker's Disability Compensation Act,[2] Ms. Arnold is entitled to benefits from General Motors based on her wages at the time

---

[1] Ms. Arnold died during the pendency of the appeal, and her estate was substituted as the plaintiff. We will continue to refer to Bernetta Arnold as the "plaintiff."

[2] MCL 418.301(5); MSA 17.237(301)(5).

These provisions, initially added to the statute by 1981 PA 200, constitute a partial codification of the judicially created favored-work doctrine. See, generally, *Pulver v Dundee Cement Co*, 445 Mich 68, 74-75; 515 NW2d 728 (1994). Relevant to the instant case are subsections (4) and (5):

of the original injury. The Worker's Compensation Appellate Commission and the Court of Appeals have answered in the negative and found that plaintiff is entitled to benefits based only on her later employment with SMART, which aggravated her back condition. We conclude that because plaintiff was disabled by her injury at General Motors, and her subsequent employment was in the nature of "favored work," she is entitled to benefits from General Motors based on her wage at the time of the original injury.

---

(4) As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.

(5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:

(a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

(b) If an employee is employed and the average weekly wage of the employee is less than that which the employee received before the date of injury, the employee shall receive weekly benefits under this act equal to 80% of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage which the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation, as determined under section 355.

\*          \*          \*

(e) If the employee, after having been employed pursuant to this subsection for less than 100 weeks loses his or her job for whatever reason, the employee shall receive compensation based upon his or her wage at the original date of injury.

I

The facts surrounding plaintiff's employment history and back condition and the magistrate's findings were summarized by the WCAC:

> Decedent began work with defendant in 1976 performing various strenuous assembly jobs. The Magistrate found that on October 24, 1986, decedent hurt her back while applying a piece of rubber weighing approximately 25 pounds under a dashboard on the assembly line at defendant. The Magistrate also found that as a result of this injury, decedent was never again able to return to the physically strenuous assembly work she had performed for defendant prior to her injury. Following this injury, decedent returned to work performing lighter duties. She took a sick leave for non-work-related foot surgery in early 1987, and upon her return to work was laid off. The Magistrate found that decedent was laid off from favored work.
>
> Eventually, decedent found employment as a part-time busdriver at Suburban Mobility Authority Regional Transportation (SMART). She was given a pre-employment physical and told to obtain a vocationally handicapped certificate because of her injured back. She did obtain said certificate and commenced employment in May of 1988. The Magistrate found that the work with SMART aggravated her back condition, and therefore found a second date of injury on plaintiff's last day of work, March 1, 1989. . . .
>
> On the basis of these findings, the Magistrate found defendant liable for weekly benefits of $297.70 from December 11, 1987 (applying the two-year-back rule) through May 8, 1988. She found SMART liable for weekly benefits of $94.60 from March 2, 1989, through March 2, 1990, and the Second Injury Fund liable pursuant to Section 521 thereafter at the same rate. [1994 Mich ACO 772, 773.]

On appeal, the WCAC affirmed with modifications.[3] It said that because the new aggravation injury took place while plaintiff was employed by SMART, liability for disability was the exclusive responsibility of that employer. The WCAC reasoned:

> [O]nce the new aggravation injury took place with SMART, liability for decedent's disability became the exclusive responsibility of SMART (and subsequently the Second Injury Fund) on the basis of the average weekly wage with SMART. This result is mandated by Section 301(1), which provides that[:]
>
> "[T]ime of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability or death,"
>
> and by the court cases which have extended this principle to situations involving several single-event injuries. It is firmly established law that the last employer to contribute to the disability is responsible for compensation. *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243 [262 NW2d 629] (1978); *Johnson v DePree Co*, 134 Mich App 709 [352 NW2d 303] (1984); *Mullins v Dura Corp*, 46 Mich App 52 [207 NW2d 404] (1973). The finding of a subsequent injury with a subsequent employer aggravating a claimant's underlying condition absolves the first employer of liability for benefits as of the date of the subsequent injury. *Stahl v General Motors Corp*, 1993 ACO #440; 1993 Mich ACO 1355.
>
> In this case, Section 301(1) and the case law placing the entire liability for compensation benefits on the last employer (and/or carrier) where an injury contributed to disability operates to produce a rather harsh result. However, this subsection and case law were designed to avoid

---

[3] It modified the magistrate's decision to require General Motors to pay benefits through plaintiff's last day of work at SMART, with credit for wages paid by SMART.

the complexities and difficulties that would be inherent in a system where liability for any one period of time must be apportioned among multiple employers. For the period as of decedent's date of injury with SMART (found to be her last day of work, March 1, 1989), the Magistrate did not err in holding that only SMART (and subsequently the Second Injury Fund) are liable for compensation benefits, and that weekly benefits must be based on decedent's average weekly wage at SMART. [*Id.* at 774.]

The Court of Appeals denied the plaintiff's application for leave to appeal,[4] and the plaintiff filed an application for leave to appeal to this Court. In lieu of granting leave to appeal, we remanded the case to the Court of Appeals for consideration as on leave granted.[5]

II

On remand, a divided Court of Appeals affirmed.[6] The majority noted the plaintiff's contention that the WCAC should have applied subsection 301(5)(e), but said that the plaintiff misconstrued the effect of subsection 301(5):

The subparts of subsection 301(5) all deal with the level of benefits to be paid, not whether benefits are to be paid in a particular circumstance. *Lee v Koegel Meats*, 199 Mich App 696, 702; 502 NW2d 711 (1993). The statute did not declare a right to compensation different from existing law.

The existing law applied by the WCAC is the Massachusetts-Michigan rule governing subsequent injuries or aggravations of initial injuries. The employer at the time of a subsequent disabling injury or aggravation of a prior injury is wholly liable for payment of compensation benefits when

---

[4] Docket No. 174816, order of September 2, 1994.
[5] 448 Mich 913 (1995).
[6] 220 Mich App 494, 497-498; 560 NW2d 59 (1996).

the subsequent injury or aggravation contributes to the disability. *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243, 253-254; 262 NW2d 629 (1978), superseded in part by 1980 PA 357, MCL 418.301(2); MSA 17.237(301)(2). In enacting § 301(5), the Legislature did not modify § 301(1), which provides that the time of injury in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the disability.

Here, it is uncontested that decedent's work as a bus driver aggravated her prior back injury. Thus, SMART and the Second Injury Fund are wholly liable for the payment of compensation benefits. We hold that the Legislature did not intend § 301(5)(e) to apply when an employee receives an aggravation of a prior injury in later employment. . . . [T]he broad language of subsection e was intended to cover situations where an employee, regardless of fault, loses favored work. It was not intended to cover situations where an employee is required to leave subsequent employment with another employer because of another compensable injury.[7]

---

[7] Circuit Judge JOHN F. FOLEY, sitting on the Court of Appeals by assignment, dissented. He argued that the fact that a worker aggravates a condition during subsequent employment should not result in a reduction of benefit rates:

The fact that the deceased aggravated her condition during her subsequent employment should not result in a reduction of her weekly benefit rate under § 301(5)(e), MCL 418.301(5)(e); MSA 17.237(301)(5)(e). To so hold would result in an absurdity. A worker who is fired or laid off during the first one hundred weeks of subsequent employment would be in a better position than a worker who had to stop working because of an aggravation of a preexisting work-related condition. If such were the law, any claimant who is employed by a subsequent employer at lower wages is taking serious risk, because if an aggravation occurred, the motivation and effort involved in seeking subsequent employment would result in a drastically reduced worker's compensation rate, as here. This is clearly not what the Legislature intended. Nor would such a result be consistent with the remedial nature of the Worker's Disability Compensation Act. [Note 6 *supra* at 499-500.]

## III

The Court of Appeals majority premised its decision on the rules governing subsequent injuries and aggravations of previous injuries. These rules apply when the injury in the first employment did not, by itself, render the employee disabled, or the employee had recovered sufficiently so as not to be disabled until suffering the injury in the later employment. As the Court of Appeals majority noted, in these situations, Michigan law places the entire liability for benefits on the last employer.

The flaw in applying that principle in this case is that the plaintiff remained disabled by the injury suffered while employed by General Motors. In the aggravation cases, although the plaintiff suffered an injury at the previous employer, the injury was not disabling. See, e.g., *Dressler v Grand Rapids Die Casting Corp, supra*:

> Defendant Michigan Plating asserts that plaintiff was "disabled from carrying on his employment at Grand Rapids Die Casting Corporation [his original employer] and accordingly was thereafter disabled from heavy work," and that therefore Grand Rapids Die Casting should be held liable for the payment of compensation.
>
> If plaintiff were disabled from the time of his employment at Grand Rapids Die Casting, and this same disability continued through the time of his subsequent employment at Michigan Plating, defendant's assertion would be correct, *Mullins v Dura Corp*, 46 Mich App 52; 207 NW2d 404 (1973). However, the meaning of "disability," in conjunction with the facts of this case, establishes that there was competent evidence by which the WCAB could find that plaintiff was disabled on the last day of his employment with Michigan Plating.

*       *       *

> There is no question that plaintiff sustained a physical injury to his back while in the employ of Grand Rapids Die Casting, and according to the opinion of the WCAB, this "single-event traumatic injury . . . resulted in immediate disability thereafter." However, the facts as reasonably accepted by the WCAB demonstrate that within a short time of the fall plaintiff was able to perform his regular duties at Grand Rapids Die Casting. Further, within a short time from termination of his employment at Grand Rapids Die Casting, plaintiff was not only able but did in fact obtain work suitable to his qualifications and training, and was able to perform such work, albeit with various degrees of discomfort from his pre-existing back condition.
>
> According to defendant's own statement of the facts of this case, plaintiff did the same type of work at Apex as he had done at Grand Rapids Die Casting. The termination of that employment was due to a layoff and not inability to perform the required work. The same pattern of employment, ability to perform, and economic layoff occurred at Ronel's. These facts support a finding by the WCAB that plaintiff was not disabled during this period. [402 Mich 251-252.]

The provisions of subsection 301(5) apply to persons who are disabled, but nonetheless obtain other employment. The various subsections spell out in detail the benefits payable by the original employer both during and after such employment. In this case, the plaintiff worked less than one hundred weeks after her injury at General Motors, making subsection 5(e) applicable. This subsection establishes that with subsequent employment of that duration, the employee does not establish a new wage-earning capacity, and is entitled to receive "compensation based upon his or her wage at the original date of injury." We can find no basis in the language of the section to conclude that the phrase, "If the employee . . . loses his or her job for whatever rea-

son," should be read to exclude situations involving aggravation of an injury by the new, favored employment.

Though the language of the statute is clear, we additionally note that this interpretation is consistent with the objective of the statute. Section 301 is intended to encourage disabled workers to seek employment within their limitations, which benefits everyone concerned, including the former employer. As the dissenting judge in the Court of Appeals noted, under the approach of the Court of Appeals, a claimant who returns to work at lower wages risks a drastic reduction in worker's compensation benefits if a subsequent injury occurs.

The Court of Appeals majority said that the subparts of subsection 301(5) deal only with the level of benefits paid, not whether they are to be paid in a particular circumstance. However, that oversimplifies the analysis of the statute. Section 301(5)(e) designates the "wage at the original date of injury" as the basis for setting benefits. Under the circumstances presented here, we hold that the statute contemplates that the original employer is to pay benefits computed using wages at the time of the original injury.[8]

Accordingly, pursuant to MCR 7.302(F)(1), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and remand this case to the Worker's Compensation Appellate Commission for entry of an order directing General Motors to pay the difference between benefits computed using wages at

---

[8] It would make no sense whatsoever for the subsequent employer, who was paying wages at a lower rate, to be liable for benefits based on the higher wages of the previous employment.

the time of the original injury and the benefits paid by SMARTand the Second Injury Fund.[9]

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred.

---

[9] We note that none of the parties argued that the subsequent employer is entitled to reimbursement from the original employer of benefits paid. That is, none of the parties argued that, under "favored work" principles, General Motors is responsible for the full amount of benefits to which plaintiff was entitled after leaving SMART. Accordingly, we express no opinion on this issue.