NICHOLS v HOWMET CORPORATION

Docket No. 303783. Submitted October 9, 2013, at Lansing. Decided
October 15, 2013, at 9:15 a.m. Leave to appeal sought.

Edwin A. Nichols filed an application in the Michigan Compensation
Appellate Commission against Howmet Corporation and its work-
er's compensation insurer, Pacific Employers Insurance
Company/CIGNA and Cordant Technologies and its worker's
compensation insurer, American Manufacturers Mutual Insurance
Company (Michigan Property & Casualty Association was substi-
tuted on appeal as a party for American Manufactuers), seeking
worker's compensation for injuries suffered as a result of his
employment with Howmet and Cordant. Nichols injured his cer-
vical spine in 1989 while working for Howmet. He reinjured his
cervical spine at work in 1993 and had additional surgeries in 1993
and 1995, which did not alleviate the symptoms. Nichols filed an
application for worker's compensation benefits and in 1998 a
magistrate found that a cervical spine condition disabled him but
that he could return to light-duty work. Nichols returned to work
in November 1998 and injured his low back in December 1998,
resulting in surgeries from 1999 to 2007. Nichols filed the instant
applications in 2007 and the magistrate found that Nichols had
proven by a preponderance of the evidence that he had sustained
a low-back injury as a result of the work-related injury that limited
his wage-earning capacity. American Manufacturers was ordered
to pay Nichols's wage-loss benefits and Pacific was dismissed from
the lawsuit. In 2009, the commission found that Cordant and
Howmet were a single entity, reversed the magistrate's order
dismissing Pacific and remanded to determine which insurance
carrier was liable for the benefits. On remand, the magistrate
found that Nichols had failed to establish an ongoing cervical spine
disability. In 2010, the commission concluded that the magistrate
had misallocated the burden of proof and remanded again with the
burden on Howmet and Pacific to prove that Nichols's disability
had ended. On second remand, the magistrate determined that
neither Nichols nor Howmet and Pacific had proved or disproved
ongoing cervical disability. The commission accepted the magis-
trate's determinations and ordered Howmet to pay benefits includ-
ing wage-loss benefits related to Nichols's cervical spine injury and

ordered Cordant and American Manufacturers to pay benefits related to Nichols's low-back injury. Howmet and Pacific appealed as on leave granted and Nichols cross-appealed. 493 Mich 890 (2012).

The Court of Appeals *held*:

1. On appeal, the Court of Appeals reviews the decision of the commission, not the magistrate. The commission did not err by finding that Howmet and Cordant are the same employer and that the case involves a dispute between insurance carriers. The commission's final order was consistent with its previous finding that Cordant and Howmet are a single entity.

2. Under the version of MCL 418.301(5) in effect when the commission issued its March 2011 opinion and order, an employee is entitled to wage-loss benefits if he or she establishes a disability which is a limitation of the employee's wage-earning capacity in work suitable to his or her qualification and training resulting from a personal injury or work related disease. The employee is not entitled to wage-loss benefits if he or she receives an offer of reasonable employment and refuses it without good cause. The worker loses his entitlement to wage-loss benefits during the period of refusal only; there is no permanent forfeiture of wage-loss benefits. A worker who returns to work is entitled to have his or her wage-loss benefits reinstated from the date that the worker returned. If the worker is no longer disabled, he or she is not entitled to benefits.

3. For purposes of workers' compensation, res judicata precludes a redetermination of an employee's disability absent a showing of a change in the claimant's physical condition. When an employee is being compensated under an existing wage-loss benefits order or award, compensation may not be discontinued or reduced without a further order or award. However, res judicata does not preclude reevaluation of an employee's entitlement to wage-loss benefits when his or her condition has changed. An employee is only entitled to wage-loss benefits if the employee can establish a causal link between a work-related injury and a reduction in his or her wage-earning capacity. An employer may file a petition to stop an employee's compensation on the grounds that the employee is still injured, but his or her injury is no longer related to the injury. The burden of proof is on the petitioner when an employer files a petition to stop compensation on this basis. The commission properly concluded that Howmet and Pacific had the burden to prove that Nichols was no longer disabled because of his cervical spine injury. Howmet and Pacific are in effect contending that Nichols is not entitled to wage-loss benefits from his cervical

spine injury because, even though the injury still exists, his wage loss is no longer related to it because it is related to his low-back injury. An employer has the burden of proof when it petitions to stop an employee's compensation on the grounds that the injury is no longer related to the injury that resulted in an award of wage-loss benefits. Similarly, an employer that contends that an employee is no longer disabled and thus no longer entitled to continued wage-loss benefits after ending a refusal to work has the burden of proving that the disabled employee's condition has changed.

4. The successive injury rule places full liability for an employee's disability on the carrier covering the risk at the time of the most recent injury that caused the disability, even if a previous injury contributed to the more recent injury. The successive injury rule only applies when the first injury contributes to or causes the second injury, as opposed to when an independent, intervening force causes the second injury. The commission did not err when it determined that the successive injury rule did not apply to the facts of this case because there was no evidence that Nichols was no longer disabled from the cervical spine injury when the second disabling injury to his lower back occurred.

5. Howmet and Pacific's argument that if Pacific is liable for wage-loss benefits it is only obligated to the difference in benefits above what American must pay for Nichols's low-back injury was not raised before the commission and was not preserved for review.

6. The commission did not err by reversing the magistrate's award of wage-loss benefits against Cordant and American Manufacturers. Under former MCL 418.301(5)(e), liability for Nichols's wage-loss benefits was properly assigned to Howmet and Pacific because, as the original employer, Howmet was liable for wage-loss benefits when Nichols lost his job after performing work for Cordant for less than 100 weeks.

Affirmed.

WORKER'S COMPENSATION — REEVALUATION OF ENTITLEMENT TO BENEFITS AFTER ENDING REFUSAL TO WORK — BURDEN OF PROOF.

An employer that contends that an employee is no longer disabled and thus no longer entitled to continued wage-loss benefits after ending a refusal to work has the burden of proving that the disabled employee's condition has changed.

*McCroskey Law* (by *Michael J. Flynn*) and *John A. Braden*, for Edwin A. Nichols.

*Smith Haughey Rice & Roegge* (by *Jon D. Vander Ploeg, Calvin J. Sterk,* and *Thomas R. Tasker*), for Howmet Corporation and Pacific Employers Insurance Corporation.

*Conklin Benham, PC* (by *Martin L. Critchell*), for Cordant Technologies and Michigan Property & Casualty Association.

Before: SERVITTO, P.J., and WHITBECK and OWENS, JJ.

PER CURIAM. This case involves a dispute between two insurers of a single employer concerning who must pay wage-loss benefits to an employee who suffered two separate, distinct injuries. Defendant Howmet Corporation (Howmet) and its workers' compensation insurer, Pacific Employers Insurance Company/Cigna (Pacific), appeal as on leave granted[1] an order of the Workers' Compensation Appellate Commission (the commission), now named Michigan Compensation Appellate Commission,[2] ordering Howmet to pay benefits including wage-loss benefits related to the cervical spine injury of plaintiff, Edwin A. Nichols, and ordering defendants, Cordant Technologies (Cordant) and American Manufacturers Mutual Insurance (American), to pay benefits related to Nichols's low-back injury. Nichols cross-appeals the same order. On appeal, the Michigan Property & Casualty Association has been substituted as a party for the American Manufacturers Mutual Insurance Company.

We conclude that the commission properly determined that (1) Howmet and Cordant were a single employer, (2) the burden to prove that Nichols was no

---

[1] *Nichols v Howmet Corp*, 493 Mich 890 (2012).

[2] Executive Order 2011-6, effective August 1, 2011.

longer disabled from his first injury was on Howmet and Pacific, and (3) the successive injury rule does not apply to the facts in this case. We conclude that we cannot determine whether Howmet and Pacific are only liable for a portion of Nichols's wage-loss benefits because they did not raise the issue before the commission. Therefore, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. NICHOLS'S CERVICAL SPINE INJURY

Nichols began working for Howmet in 1979. In June 1989, while attempting to catch a heavy barrel, Nichols injured his cervical spine. The injury required surgery. At that time, Pacific was the insurer on the risk for his injury. Nichols recovered from surgery and returned to work for Howmet in December 1989 without restrictions.

Nichols injured his cervical spine again in January 1993, and he began to experience neck pain, numbness, and headaches. Nichols required another surgery and stopped working in March 1993. He testified that the 1993 surgery did not relieve his symptoms, and the doctor who performed the surgery testified that "[t]he fusion did not take[.]"

In March 1995, Nichols underwent a third surgery on his cervical spine. In Magistrate Grit's opinion, in 1998 Nichols continued to suffer from headaches, neck aches, arm aches, and trouble using his right hand. In 1996, Howmet offered Nichols light-duty work. Nichols did not return to work, and Howmet terminated his employment in November 1996.

In March 1997, Nichols returned to full-time, light-duty work at Howmet. The company physician restricted Nichols to "light duty sedentary work" with

restrictions. On the basis of Nichols's complaints of continued pain, his family physician restricted him to working four hours a day and, in September 1997, restricted him from working completely.

In October 1997, Nichols declined Howmet's offer to return to work. He petitioned for workers' compensation benefits. In April 1998, Nichols underwent an independent medical evaluation with Dr. Dennis Szymanski. Szymanski opined that Nichols could return to full-time work as long as he avoided repetitive overhead activities.

After a trial in June 1998, Magistrate Grit found that Nichols could return to light-duty work, with restrictions. Magistrate Grit found that Nichols's cervical condition disabled him, but she limited his benefits to the period from March 1997 to May 1997. Magistrate Grit determined that Nichols "forfeit[ed] his wage loss benefits as of the date of his refusal to participate in the favored work program."

### B. NICHOLS'S LOW-BACK INJURY

In November 1998, Nichols returned to light-duty work. On December 7, 1998, Nichols injured his low back while bending to pick up a folder of papers. The injury resulted in a series of surgeries from 1999 to 2007. At that time, American was the insurer on the risk.

Nichols did not return to work. In April 2005, Nichols filed an application for a hearing, naming Howmet as his employer and providing the dates of employment from January 1979 to February 1999. Both Pacific and American filed carrier responses, identifying Howmet as the employer. Nichols eventually withdrew his petition when the benefits were voluntarily paid.

In April 2007, Nichols filed two applications for workers' compensation benefits, one against Howmet and Pacific, and a second against Cordant and American.

Dr. Yousif Hamati testified that he "would never return [Nichols] to duty because of his multiple surgeries to the neck and low back[.]" Dr. Henry Ottens testified that Nichols's neck surgeries produced scar tissue and made his neck vulnerable to wear and tear, but that Nichols's low back was "more problematic" and would "severely restrict his activities."

Dr. Grant J. Hyatt testified that Nichols should only work part-time, with restrictions. But Dr. Hyatt testified that he was asked only to evaluate the extent of Nichols's low back injury. Szymanski testified that he would not restrict Nichols on the basis of his cervical spine injury, but would restrict Nichols from a variety of activities on the basis of his low back injury.

Magistrate McAree found that Hyatt's opinions were the most credible. Magistrate McAree also found that Nichols had proved by a preponderance of the evidence that he sustained a low-back injury and his wage-earning capacity was limited "as a result of the personal injury of December 7, 1998."

Magistrate McAree found that light-duty work was no longer available for Nichols within his restrictions. He ordered American to pay Nichols's wage-loss benefits. After the parties appealed the order, Magistrate McAree dismissed Pacific from the suit.

### C. THE COMMISSION'S 2009 DECISION

Nichols and American appealed Magistrate McAree's decision. Nichols asserted that both Howmet and American were liable for full, "stacked" wage-loss ben-

efits. American contended that the insurer liable for Nichols's benefits was Pacific because, under MCL 418.301(5)(e), Nichols worked less than 100 weeks after his January 1993 injury. Pacific responded that Magistrate McAree properly determined that American was liable because of the successive injury rule.

The commission reversed Magistrate McAree's order dismissing Pacific and remanded for further proceedings. The commission opined that the appeal "center[ed] around the single issue of which carrier is liable for paying benefits to [Nichols]" and found that "Cordant [T]echnologies and Howmet Corporation are the same entity." Because Magistrate McAree had not addressed Nichols's cervical spine injury, the commission remanded.

### D. PROCEEDINGS AFTER FIRST REMAND

On remand, Magistrate McAree opined that res judicata did not bar litigation concerning whether Nichols suffered from an ongoing disability, and found that the injury to Nichols's low back was "a new condition distinct from [Nichols's] prior cervical injuries." Magistrate McAree found Hamati and Hyatt the most credible, but neither of these doctors addressed whether Nichols had an ongoing cervical spine disability. He found that the other doctors disagreed regarding whether Nichols continued to suffer restrictions because of his cervical spine injury. He noted that Ottens's physical examination of Nichols's neck revealed that it was "nearly normal" and there was no documented treatment of Nichols's cervical spine after July 1998.

Magistrate McAree determined that Nichols's medical proofs established a clear history of prior cervical injuries, but that he "fail[ed] to establish that the historical facts of those prior surgeries and continued

physical complaints are sufficient to establish ongoing cervical disability." The Magistrate noted that he was not finding that the cervical condition was completely healed or irrelevant, but that it no longer remained a factor in his overall condition, even though Nichols was working a lighter job when he injured his low back. Magistrate McAree ultimately concluded that Nichols "simply failed to establish ongoing cervical disability."

### E. THE COMMISSION'S 2010 DECISION

The commission concluded that Magistrate McAree had "misallocated the burden of proof." It reasoned that MCL 418.301(5)(a) provides that if a magistrate finds that a claimant is disabled, but suspends benefits because the employee refused to return to work, the employee may request a determination that his or her refusal to return to work has ended. The commission further reasoned that if the employee proves that he or she has returned to work—and would thus be entitled to have his or her wage-loss benefits resume—the employer has the opportunity to prove that the employee is no longer disabled, and that he or she is therefore *not* entitled to have wage-loss benefits resume. According to the commission, "[t]he employee carries the burden of proof concerning the end of the refusal, but the employer carries the burden of proof that the disability ended." Accordingly, the commission determined that Magistrate McAree erred by concluding that Nichols had not proved continuing disability. The commission opined that Howmet and Pacific needed to prove that Nichols's disability had ended. It remanded for Magistrate McAree to determine whether each side had satisfied its burden of proof.

A dissenting commissioner would have held that Howmet and Pacific had forfeited the issue of whether

Nichols had a continuing cervical disability because they had not filed a petition to stop Nichols's benefits and Magistrate McAree had not addressed whether Nichols's cervical condition had changed.

### E. PROCEEDINGS AFTER SECOND REMAND

On second remand, Magistrate McAree determined that Nichols proved that he returned to work. He noted that Howmet and Pacific had not filed a motion to stop Nichols's benefits, and framed the second issue as follows:

> II. Did Defendant Howmet meet its burden of proving that Plaintiff's cervical disability had ended?
>
> Answer: No.

Magistrate McAree explained that "none of the testimony relative to the cervical condition . . . [was] persuasive on the issue of ongoing cervical disability." He stated that he did not "accept any claim that the cervical condition has somehow, subsequently changed from occupational to nonoccupational." He explained why he did not find any of the doctors' opinions persuasive on the issue of ongoing cervical disability, and noted that he did not find "sufficient evidence that physical limitations have ended[.]" In summary, Magistrate McAree concluded that "the evidence produced neither proved nor disproved ongoing cervical disability. Whoever had the burden of proof failed."

### G. THE COMMISSION'S 2011 DECISION

The commission accepted Magistrate McAree's determinations and modified his order "to reflect the appropriate liabilities." The commission rejected Howmet and Pacific's argument that it was not the proper party to pay benefits, because "Howmet must prove the

disability ended before any order relieves the obligation to pay." It also rejected Howmet and Pacific's argument concerning the successive injury rule on the basis that Nichols's injuries were to different body parts. The commission ordered that "Defendant Cordant must pay benefits related to plaintiff's low back injury. Defendant Howmet must pay benefits related to plaintiff's cervical injury including wage loss benefits." A dissenting commissioner would have held that, for cases in which two distinct injuries are present, "an employer paying a lower wage loss benefit . . . reduces whatever obligation the earlier injury with an employer paying a higher wage loss benefit . . . has[.]" The commission disagreed, noting that "the Supreme Court [in *Arnold v Gen Motors Corp*[3]] specifically declined to decide this very issue because the parties did not raise the issue."

## II. NUMBER OF EMPLOYERS

### A. STANDARD OF REVIEW

This Court's review of a decision of the Michigan Compensation Appellate Commission is limited. Absent fraud, the commission's findings of fact are conclusive on appeal if there is any competent evidence in the record to support them.[4] This Court reviews de novo questions of law involving any final order of the commission.[5]

### B. ANALYSIS

Nichols contends that the commission found that Howmet and Cordant are separate employers. We dis-

---

[3] *Arnold v Gen Motors Corp*, 456 Mich 682; 575 NW2d 540 (1998).

[4] *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709-710; 614 NW2d 607 (2000).

[5] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000).

agree. If viewed in isolation, the commission's final paragraph of its final order potentially confuses the issue, as it states:

> Defendant Cordant must pay benefits related to [Nichols's] low back injury. Defendant Howmet must pay benefits related to [Nichols's] cervical injury including wage loss benefits.

However, we cannot take this paragraph out of context. The commission found that the conflict in this case centered on "the single issue of which carrier is liable for paying benefits to [Nichols]" and stated that "Cordant [T]echnologies and Howmet Corporation are the same entity." The record evidence supported the commission's finding that Nichols had only one employer. This includes Nichols's testimony that he worked for Howmet and his April 2005 application, which named Howmet as his employer from January 1979 to February 1999. Further, we note that it was the convention of the magistrate and commission in this case to refer to Cordant/American as simply Cordant, and Howmet/Pacific as Howmet, and frequently refer to them collectively in the singular term "defendant."

Finally, while the dissenting commissioner clearly referred to Howmet and Cordant as separate employers, and the magistrates' various opinions are ambivalent on the issue, the same is not true of the commission's opinion. We review the decision of the commission, not the decision of the magistrate.[6] In its original opinion, the commission found that Cordant and Howmet were the same employer, and it did not subsequently change its original finding.

We therefore conclude that the commission's order does not indicate that Cordant and Howmet are sepa-

---

[6] *Mudel*, 462 Mich at 709.

rate employers. The commission's final order is consistent with the commission's previous finding that Cordant and Howmet are the same employer and that this case involves a dispute between insurance carriers.

### III. LIABILITY FOR WAGE LOSS

#### A. STANDARD OF REVIEW

As noted, the commission's findings of fact are conclusive on appeal if there is any competent evidence in the record to support them, and we review de novo questions of law.[7] We review de novo which party bears the burden of proof because it is a question of law.[8]

#### B. EXTENT OF HOWMET'S LIABILITY FOR WAGE LOSS

##### 1. LEGAL STANDARDS

As an initial matter, we note that the Legislature amended the provisions of the Workers' Compensation Act after the commission issued its order in this case.[9] This opinion concerns the provisions of MCL 418.301 as they were in effect when the commission decided this case.

At that time, MCL 418.301(5) governed wage-loss benefits. To be entitled to wage-loss benefits, an employee must establish that he or she has a disability, which is "a limitation of the employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work re-

---

[7] *Id.* at 709-710; *DiBenedetto*, 461 Mich at 401.

[8] *Pickering v Pickering*, 253 Mich App 694, 697; 659 NW2d 649 (2002).

[9] MCL 418.301, as amended by 2011 PA 266, effective December 19, 2011. Unless otherwise noted, all references in this opinion are to the former version of MCL 418.301.

lated disease."[10] But if a disabled employee receives an offer of reasonable employment and refuses it without good cause, the employee is not entitled to wage-loss benefits.[11]

A worker only loses his or her entitlement to wage-loss benefits during the period of refusal.[12] He or she does not permanently forfeit wage-loss benefits.[13] A worker who returns to work is entitled to have his or her wage-loss benefits reinstated from the date that the worker returned.[14] But if the worker is no longer disabled, he or she is not entitled to benefits.[15]

### 2. APPLYING THE STANDARDS

It is undisputed that Nichols ended his period of refusal by returning to work in 1998. The question here is: when an employer contends that the employee was no longer disabled when he or she has returned to work and is seeking benefits, does the employer have the burden to prove that the employee was no longer disabled, or does the employee have the burden to prove that he or she continues to be disabled? Howmet and Pacific contend that the burden is on the employee to show that he or she has a continuing disability. Nichols contends that res judicata either prohibits a redetermination of disability or, in the alternative, places the burden of proof on the employer to establish that the disability has ended. We conclude that, consistently

---

[10] MCL 418.301(4) and (5).

[11] MCL 418.301(5)(a).

[12] *Perez v Keeler Brass Co*, 461 Mich 602, 611; 608 NW2d 45 (2000); *McJunkin v Cellasto Plastic Corp*, 461 Mich 590, 598; 608 NW2d 57 (2000).

[13] *Perez*, 461 Mich at 611; *McJunkin*, 461 Mich at 598.

[14] *McJunkin*, 461 Mich at 599.

[15] *Perez*, 461 Mich at 615.

with principles of res judicata as applied to workers' compensation law, the burden of proof is on the employer to show that the employee's disability has ended.

Res judicata precludes a redetermination of an employee's disability "absent a showing of a change in the claimant's physical condition."[16] Thus, when an employee is being compensated under an existing order or award, "compensation shall not be discontinued or reduced without a further order or award[.]"[17]

But res judicata does not preclude reevaluation of an employee's entitlement to wage-loss benefits when his or her condition has changed.[18] If an employee's condition has changed, the employer may petition to stop or reduce his or her workers' compensation payments.[19] An employee is only entitled to wage-loss benefits if the employee can establish a causal link between a work-related injury and a reduction in his or her wage-earning capacity.[20] Thus, an employer may file a petition to stop an employee's compensation on the grounds that the employee is still injured, but his or her wage loss is no longer related to the injury.[21] "On a petition to stop compensation, . . . the burden of proof is upon the petitioner."[22]

---

[16] *Kosiel v Arrow Liquors Corp*, 446 Mich 374, 380; 521 NW2d 531 (1994).

[17] Mich Admin Code, R 408.40(1).

[18] *Kosiel*, 446 Mich at 380. See *Reiss v Pepsi Cola Metro Bottling Co, Inc*, 249 Mich App 631, 640; 643 NW2d 271 (2002).

[19] *Pike v City of Wyoming*, 431 Mich 589, 600-601; 433 NW2d 768 (1988); R 408.40(1).

[20] *Sington v Chrysler Corp*, 467 Mich 144, 155, 158; 648 NW2d 624 (2002); *Sweatt v Dep't of Corrections*, 468 Mich 172, 186; 661 NW2d 201 (2003).

[21] See *Reiss*, 249 Mich App at 634-635, 639.

[22] *Johnson v Pearson*, 264 Mich 319, 320; 249 NW 865 (1933).

It is logical to apply the law regarding an employer's petition to stop compensation to the context of an employer contending that an employee is no longer disabled and thus is not entitled to continued wage-loss benefits after ending a refusal to work. Howmet and Pacific are in effect contending that Nichols is no longer entitled to wage-loss benefits from his cervical spine injury because the injury still exists, but his wage loss is no longer related to it. In other words, Howmet and Pacific contend that the sole cause of Nichols's reduced wage-earning capacity is his low-back injury. This circumstance is similar to an employer petitioning to stop an employee's compensation on the grounds that the employee's wage loss is no longer related to his or her injury. It would be illogical and contrary to the precepts of res judicata to require Nichols to show that his condition has not changed when, under similar circumstances, the burden of proof would be on Howmet and Pacific to show that Nichols's condition *has* changed.

Therefore, we conclude that the commission appropriately determined that Howmet and Pacific had the burden to prove that Nichols was no longer disabled because of his cervical spine injury.

### C. SUCCESSIVE INJURY RULE

#### 1. LEGAL STANDARDS

The successive injury rule places full liability for an employee's disability on the carrier covering the risk at the time of the most recent injury that caused the disability, even if a previous injury contributed to the more recent injury.[23] The successive injury rule applies only when the first injury contributes to or causes the

---

[23] *Mudel,* 462 Mich at 724; *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 253-254; 262 NW2d 629 (1978).

second injury, as opposed to when an independent, intervening force causes the second injury.[24]

### 2. APPLYING THE STANDARDS

Howmet and Pacific contend that the commission erred by failing to apply the successive injury rule to hold American, who was the insurer on the risk at the time of Nichols's second injury, liable for his disability. We disagree.

First, the commission did not find that Nichols's cervical spine injury caused or contributed to his low back injury. It instead adopted the magistrate's finding that "subsequent injury is to [Nichols's] lumbar spine, which is in fact . . . found to be a new condition distinct from [Nichols's] prior cervical injuries." Absent a finding that Nichols's cervical spine injury caused or contributed to his low back injury, the successive injury rule does not apply because the injuries are independent. Therefore, we conclude that the commission did not err when it concluded that the successive injury rule did not apply to the facts in this case.

Further, Magistrate Grit found that Nichols's cervical spine injury disabled him and entitled him to wage-loss benefits. The successive injury rule applies when either (1) the first injury, by itself, did not disable the employee, or (2) the first injury was disabling, but the employee had recovered from it and was no longer disabled when the second disabling injury occurred.[25] Here, there was no evidence that when Nichols suffered his low-back injury in 1998, he was no longer disabled. Thus, the commission

---

[24] *Dressler*, 402 Mich at 253; *Brinkert v Kalamazoo Vegetable Parchment Co*, 297 Mich 611, 614-615; 298 NW 301 (1941).

[25] *Arnold*, 456 Mich at 689; *Dressler*, 402 Mich 251-253; *Mudel*, 462 Mich at 724-726.

correctly determined that the successive injury rule did not apply to the facts in this case.

## D. ALLOCATION OF LIABILITY

Howmet and Pacific contend that, if Pacific is liable for wage-loss benefits, it is only obligated to pay the difference in benefits above what American must pay for Nichols's low-back injury. We conclude that we may not reach this issue.

MCL 418.861 provides that this Court has the power to review "questions of law involved in any final order of the board[.]" We may not reach legal arguments that were not raised before or addressed by the commission.[26] A careful review of Howmet and Pacific's briefs below reveals that Howmet and Pacific did not raise this issue before the commission and, similarly, that the commission did not address it. Howmet and Pacific contended below only that the successive injury rule placed full liability for Nichols's disability on Cordant and American. Therefore, we cannot reach the merits of this issue.

We recognize that MCL 418.301(5)(e) provides that the original employer must pay wage-loss benefits, but it does not allocate liability among insurance carriers concerning whether one insurer may seek reimbursement from another.[27] But, as the dissenting commissioner here aptly noted, "while one would suspect that the amount of Howmet's liability ought to be reduced by the amount of Cordant's liability, this argument has not been made." Regardless of whatever merit this legal argument may have, we cannot reach it.

---

[26] MCL 418.861; *Calovecchi v Michigan*, 461 Mich 616, 626; 611 NW2d 300 (2000).

[27] See *Arnold*, 456 Mich at 691, 692 n 9.

On cross-appeal, Nichols contends that the commission erred by reversing the magistrate's award of wage-loss benefits against Cordant and American. We disagree. MCL 418.301(5)(e) provides that the original employer is liable for wage-loss benefits when a disabled employee loses his or her job after performing favored work for less than 100 weeks.[28] In this case, Nichols lost his employment after working for less than 100 weeks. Therefore, the commission properly assigned liability for his wage-loss benefits to Howmet and Pacific.

### E. "STACKING" OF BENEFITS

On cross-appeal, Nichols contends that he is entitled to "stack" full wage-loss benefits from each employment because separate injuries from separate employers do not coordinate. As explained, the commission found that Cordant and Howmet were the same employer and that this case involved a dispute between which insurance carrier was liable to pay for Nichols's benefits. Because Nichols bases his argument on the faulty premise that he was employed by two different employers, we reject it.

### IV. CONCLUSION

We conclude that the commission did not err by requiring Pacific to prove that Nichols was no longer disabled. We also conclude that (1) the commission properly determined that the successive injury rule does not apply in this case, and (2) we cannot reach the merits of Pacific's argument that it is only liable for the difference in benefits because it did not raise this legal argument before the commission.

---

[28] MCL 418.301(5)(e); *Arnold*, 456 Mich at 690-691.

We affirm.

SERVITTO, P.J., and WHITBECK and OWENS, JJ., concurred.